## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Emmett V. Jordan and Amy R. Jordan,**
**individually and as natural parents of**
**J.V.J., a minor;**

**Plaintiffs,**

**v.**                                                  **Case No. 14-2539-JWL**

**Unified Government of Wyandotte County**
**and Kansas City, Kansas et al.,**

**Defendants.**

### MEMORANDUM & ORDER

Plaintiffs Emmett V. Jordan and Amy R. Jordan, individually and on behalf of their minor child, filed suit in state court under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy the tax indebtedness of plaintiffs Emmett and Amy Jordan, delinquent taxpayers. The seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department. The KDOR defendants removed this action to federal court and subsequently filed a motion to dismiss, which is presently pending before the court. This matter is presently before the court on a motion to dismiss filed by the KDOR defendants.[1] Specifically, the KDOR defendants—KDOR agents Carrie Purney-Crider, Carol Jackson and Heather Wilson; KDOR's Secretary Nick Jordan; KDOR's Director of Taxation Steve Stott; and the Kansas Department of Revenue—

---

[1] The Unified Government defendants have also filed a motion to dismiss but that motion is not yet ripe for resolution and will be addressed in a subsequent memorandum and order.

move to dismiss plaintiffs' amended petition for failure to state a claim upon which relief can be granted.[2]  As will be explained, the motion is granted in part and denied in part.[3]

**Background**

The KDOR defendants' motion to dismiss is based primarily on Federal Rule of Civil Procedure 12(b)(6).  In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiffs' amended petition, are accepted as true for purposes of defendants' motion.

On September 17, 2012, the Kansas Department of Revenue issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan.  The writ was executed on

---

[2] In their motion to dismiss, defendants Purney-Crider, Jackson and Wilson assert that the court lacks personal jurisdiction over them because they have not been properly served with process. Any argument about service is premature as the 120-day service period set forth in Federal Rule of Civil Procedure 4(m) has not expired and plaintiffs have indicated that they are attempting to obtain personal service on these defendants.

[3] In connection with their motion to dismiss, the KDOR defendants seek an award of attorneys' fees under 42 U.S.C. § 1988 on the grounds that plaintiffs' suit is "vexatious, frivolous, or brought to harass or embarrass the defendants."  The request is summarily denied.

September 18, 2012 by more than 80 agents, including defendant Carrie Purney-Crider and other unnamed agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department. Plaintiffs allege that the agents were armed with automatic weapons and dressed in combat gear. According to the amended petition, Emmett Jordan and his brother Gary Jordan were present inside the home when five "law enforcement officers" knocked down the front door of the home and entered the home "shouting profane and largely unintelligible orders" at Mr. Jordan and his brother. The amended petition alleges that plaintiff Emmett Jordan was forced to the floor, face down, and that an unnamed officer had his or her knee on plaintiff's neck. Emmett Jordan alleges that one of his teeth was broken during this incident. Emmett Jordan was then handcuffed behind his back while "automatic rifles were trained" on his head. Plaintiff Emmett Jordan was then forcibly removed from his home over his protests and his repeated requests for the identity of the officers and the purpose of their visit was ignored.

Plaintiffs allege that Emmett Jordan was detained, still handcuffed, in the back of a police car for a substantial period of time and that, thereafter, he was restricted to a lawn chair outside his house where officers denied him the use of a telephone. Despite the fact that Mr. Jordan provided keys to all locks on the premises, the officers executing the writ utilized destructive measures to access various areas of the Jordans' property, including the breaking of windows and the damaging of doors. Plaintiffs allege that officers remained on his property for nine hours, during which time the officers unnecessarily destroyed and damaged plaintiffs' property and ultimately seized property worth far more than the tax liability owed by the Jordans. Plaintiffs further allege that the officers seized property belonging solely to their minor son in

3

violation of the writ.  According to plaintiffs, the officers amused themselves by driving plaintiffs' dirt bikes and ATVs around the Jordans' property and that no officer present made any effort to curb this behavior.

The amended petition alleges that defendant Carrie Purney-Crider, an agent with the KDOR, commanded Emmett Jordan to "sign some papers" during the execution of the writ and that she "threw the papers in his face" when he refused to sign them.  She advised Mr. Jordan that she was going to make sure that he would be "criminally charged for holding vehicles that belonged to someone else," apparently referring to vehicles owned by Mr. Jordan's adult daughter.  By the time the officers left the premises, the Jordans' property had been "ransacked," with the contents of dresser drawers strewn about; broken glass scattered throughout the house; and empty water bottles and food wrappers discarded on the grounds.  Plaintiffs further allege that the officers stole property owned by their minor son and that the officers destroyed Emmett Jordan's CPAP machine mask, rendering it impossible for Mr. Jordan to sleep. Plaintiffs contend that they were still cleaning up and repairing the damages more than 30 days after the execution of the writ.  They allege that they have suffered continuous emotional distress; impaired sleep; embarrassment in their neighborhood; and that Emmett Jordan's children are afraid to visit him and will not permit their children to visit on holidays.

In their amended petition, plaintiffs allege that the KDOR, defendant Nick Jordan and defendant Steve Stotts failed to adequately train and supervise Ms. Purney-Crider, Ms. Jackson and Ms. Wilson and adopted and implemented policies, customs or practices permitting DOR employees to engage in the constitutional violations alleged in the amended petition, including excessive force, false arrest and the deprivation of property without due process of law.

Plaintiffs further assert that Ms. Purney-Crider, Ms. Jackson and Ms. Wilson violated their Fourth, Fifth and Fourteenth Amendment rights based on the detention of Emmett Jordan; the use of excessive force with respect to Emmett Jordan; and the deprivation of plaintiffs' property without due process of law.   Plaintiffs' amended petition also asserts a Kansas common law claim for intentional infliction of emotional distress against all individual defendants and a claim against Mr. Stotts for an accounting of all property seized.  The KDOR defendants move to dismiss all claims against them.

**Subject Matter Jurisdiction**

Plaintiffs have asserted claims against Mssrs. Stotts and Jordan in both their individual and official capacities.  In their motion to dismiss, defendants Stotts and Jordan assert that the court must dismiss plaintiffs' official capacity claims against them as the doctrine of sovereign immunity bars such claims.  Plaintiffs have not responded to the substance of this argument, but dismissal of the official capacity claims is required in any event. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[4]  Moreover, because the Eleventh Amendment clearly bars plaintiffs' claims for damages against the KDOR, plaintiffs' claims against the agency itself are dismissed. *See Olson v. Kansas Dept. of Revenue*, 555 Fed. Appx. 747, 748-49 (10th Cir. 2014) (Eleventh Amendment "precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is

---

[4] While the Eleventh Amendment does not bar an action against an official in his or her official capacity for prospective injunctive or declaratory relief, *see Buchheir v. Green,* 705 F.3d 1157, 1159 (10th Cir. 2012), it is undisputed that plaintiffs do not seek such relief in their amended petition. Rather, plaintiffs seek only monetary damages in their amended petition.

5

essentially one for recovery of money from the state treasury."); *Lewis v. Kansas Dep't of Revenue*, 181 Fed. Appx. 732, 733 (10th Cir. 2006) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against . . . arms of the State for alleged deprivation of civil liberties.").

Plaintiffs also move to dismiss any claims based "directly" on the Fourth, Fifth and Fourteenth Amendments to the United States Constitution on the grounds that any claims for violations of the rights secured by these Amendments must be asserted under 42 U.S.C. § 1983. In response, plaintiffs have clarified that they have asserted no claim directly under the provisions of the United States Constitution and, based on the court's own reading of the amended petition, the court concludes that plaintiffs' claims are appropriately asserted under 42 U.S.C. § 1983.

**Failure to State a Claim**

In addition to challenging this court's subject matter jurisdiction over plaintiffs' claims, defendants also seek dismissal of the amended petition for failure to state a claim. Specifically, defendants contend that they are absolutely immune from liability for money damages; that the claims as alleged do not satisfy the pleading requirements of *Twombly* and *Iqbal*; and that plaintiffs' allegations, even if true, simply do not state claims for the constitutional violations alleged. The court addresses each of these arguments in turn.

*Absolute Immunity*

The KDOR defendants contend that dismissal of the amended petition is required because, having acted pursuant to a judicially-issued warrant, they are absolutely immune from liability for money damages.  This argument, premised solely on the Tenth Circuit's decision in *Wilcox v. Magill*, 468 Fed. Appx. 849 (10th Cir. 2012), is rejected.  Defendants are correct that "officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Id.* at 852-53.  Consistent with that principle, the Circuit in *Wilcox* found that to the extent that state officers acted pursuant to a writ of execution, they were entitled to immunity.  *See id.* at 852-53.  As the Circuit noted however, this quasi-judicial immunity "protects officials from being 'called upon to answer for the legality of decisions which they are powerless to control.'" *Id.* (quoting *Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989)).  Moreover, absolute immunity "does not apply" when officers are alleged to have exceeded the scope of the writ.  *Id.*  In other words, the doctrine of quasi-judicial immunity is intended to protect officers who are merely performing ministerial acts "intimately related to the judicial process." *Valdez*, 878 F.2d at 1289.  Here, plaintiffs are not challenging the writ itself or the fact that these officers executed the writ.  Rather, plaintiffs allege that the officers exceeded the scope of the writ and that they engaged in conduct not authorized by the writ and entirely within their own control.  Defendants, then, have not shown that they are absolutely immune from liability for the acts alleged in the amended petition.

*Pleading Deficiencies Under Twombly and Iqbal*

Defendants move to dismiss the claims in the amended petition on the grounds that plaintiffs have not alleged plausible claims for relief under *Twombly* and *Iqbal*.  The court begins its analysis with those claims asserted against defendant Nick Jordan and Steve Stotts.  According to the amended petition, Mr. Jordan is the final policymaker for the KDOR and Mr. Stotts is "responsible for administration and compliance of Kansas taxes."  The petition alleges that "these defendants" (including Unified Government defendants) had policies and procedures in place which operated to deprive plaintiffs of their constitutional rights.  The petition further alleges that "the defendants" failed to train and supervise their agents, resulting in the violations alleged.  There are no other substantive allegations in the amended petition concerning Mr. Jordan or Mr. Stotts.  With respect to the failure-to-train allegation, plaintiffs do not allege that any violation committed by Ms. Purney-Crider, Ms. Jackson or Ms. Wilson was the result of any deficiency in their training or supervision.  This claim, then, is subject to dismissal.  *See Dodds v. Richardson*, 614 F.3d 1185, 1212-13 (10th Cir. 2010) (failure-to-train and failure-to-supervise theories of liability require showing that injury resulted from failure); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (plaintiff must establish an affirmative link between supervisor's failure to supervise and constitutional deprivation).  Plaintiffs contend in their response that Mssrs. Jordan and Stotts' failure to train and supervise is "evident" from the conduct of the officers and agents during the execution of the writ.  Under Tenth Circuit law, plaintiffs may not rely solely on the constitutional violation to establish a failure-to-train or failure-to-supervise theory of liability.  *See Lewis v. McKinley County Bd. of County Commr's*, 425 Fed. Appx. 723, 726 (10th Cir. 2011) (allegation that officer was "obviously ill-trained" in light of alleged violation did not state a claim against municipality); *Hook v. Regents of Univ. of*

*California*, 394 Fed. Appx. 522, 536 (10th Cir. 2010) (to establish supervisor's liability under 1983, plaintiff must show more than constitutional violation by supervisor's subordinate). Thus, even if plaintiffs had included this allegation in their amended petition, the court would still dismiss the claim.

Similarly, the allegation that Mr. Jordan and Mr. Stotts adopted and implemented policies, customs or practices which operated to deprive plaintiffs of their constitutional rights fails to state a plausible claim for relief under *Twombly* in the absence of any factual allegations suggesting that the specific constitutional violations alleged by plaintiffs resulted from the adoption or implementation of such policies. Plaintiffs allege in conclusory fashion that Mssrs. Jordan and Stotts adopted policies permitting criminal damage to property, aggravated assault with deadly weapons, false imprisonment, theft, vandalism and "outrageous conduct," but there is no allegation in the amended petition that any DOR employees engaged in any such conduct. Similarly, plaintiffs allege that Mssrs. Jordan and Stotts implemented policies permitting the deprivation of property without due process, but there are no specific allegations concerning what role Ms. Purney-Crider, Ms. Jackson or Ms. Wilson had in the seizure of plaintiffs' property. For these reasons, the allegations in the amended petition fail to state a plausible claim for relief against Mssrs. Jordan and Stotts. The court, however, will permit plaintiffs to amend their petition to the extent they are able to connect Mssrs. Jordan and Stotts to the alleged constitutional violations committed by agents of the DOR.

Defendants next assert that the amended petition fails to state a plausible claim for relief against Ms. Purney-Crider, Ms. Jackson or Ms. Wilson for any alleged constitutional violations. According to defendants, the amended petition does not specifically assert what role, if any, Ms.

Purney-Crider had in executing the writ, detaining Emmett Jordan, seizing and retaining plaintiffs' property or selling plaintiffs' property.  Moreover, the amended petition is devoid of any allegations whatsoever concerning the role played by Ms. Jackson and Ms. Wilson.  The court agrees that plaintiffs must amend their petition to include specific allegations as to the involvement of these individuals in executing the writ and in seizing plaintiffs' property.  The allegations in the amended petition do not plausibly suggest that Ms. Purney-Crider unlawfully detained Emmett Jordan or that she personally used any force with respect to Mr. Jordan.  There are no specific facts alleged about Ms. Jackson or Ms. Wilson.  Thus, the court dismisses the false arrest, excessive force and deprivation of property claims asserted against these individuals.[5]  Plaintiffs state in their response that Ms. Purney-Crider, Ms. Jackson and Ms. Wilson were all present during the execution of the writ, failed to intervene to stop the unconstitutional conduct of other officers present at the scene, and "directed and encouraged" the nine-hour raid.  These allegations, however, do not appear in the amended petition and are conclusory in any event.  The court, then, will permit plaintiffs to amend their petition to the extent they can allege facts plausibly asserting that Ms. Purney-Crider, Ms. Jackson and Ms. Wilson witnessed the events and had the opportunity to intervene.  While defendants suggest in their reply brief that these individuals had no responsibility in law or in fact to intervene to stop

---

[5]  Because the court is dismissing plaintiffs' excessive force claim as currently pled, the court need not address defendants' alternative argument that the excessive force claim should be dismissed for failure to allege actual injury.

the alleged violations, they may assert this challenge, if appropriate, in response to plaintiffs'

second amended petition.[6]


*Claims Based on Seizure of Plaintiffs' Property*

Apart from their *Twombly* arguments, defendants further contend that plaintiffs' amended

petition does not allege a Fourth or Fourteenth Amendment violation that is actionable under 42

U.S.C. § 1983 because any seizure of plaintiffs' property was done pursuant to a valid writ of

execution.   In response, plaintiffs assert that their claims stem not from the lawful seizure of

property to satisfy the tax warrant, but from the seizure of property beyond what was necessary

to satisfy the warrant and the wrongful seizure of property from their minor child.   Defendants

do not meaningfully respond to this argument in their reply brief and the court rejects the motion

to dismiss on this basis.


*Claims Based on Deprivation of Plaintiffs' Property*

Defendants move to dismiss plaintiffs' claims that they were deprived of their property

without due process on the grounds that adequate alternative state remedies exist for plaintiffs'

loss of property.   *See McKinney v. Revell*, 364 Fed. Appx. 430, 432 n.2 (10th Cir. 2010) (no due

process violation occurs if there is an adequate alternative state remedy).   The rule relied upon

---

[6] In their motion to dismiss, defendants purport to assert the defense of qualified immunity but they have moved to dismiss on that basis only the false arrest claim of a plaintiff in a related case—the claim of Emmett Jordan's brother, Gary Jordan.   It appears that defendants, in "cutting and pasting" from their brief in the related case, have inadvertently omitted any argument concerning qualified immunity as to the specific claims alleged in this lawsuit.   The court, then, declines to address the qualified immunity argument.

by defendants, however, applies only when the plaintiff pleads negligent deprivation of property by a state employee or pleads intentional but random and unauthorized deprivation of property by a rogue state employee. *See Wolfenbarger v. Williams*, 774 F.2d 358, 363-64 (10th Cir. 1985) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)).  The availability of state remedies is not relevant to and does not bar a claim based on a deprivation resulting from an established or de facto policy, procedure or custom. *Abbott v. McCotter*, 13 F.3d 1439, 1442 n.3 (10th Cir. 1994). Plaintiffs' allegations concerning the deprivation of their property cannot, at this stage, be categorized as the type of unforeseeable, random property deprivation addressed in *Hudson*. The court, then, denies defendants' motion on this issue.


**State Law Claims**

Plaintiffs assert two state law claims in their amended petition—a claim for intentional infliction of emotional distress (or outrage) under Kansas law and a claim against Mr. Stotts for an accounting relating to the disposition of plaintiffs' property.  Defendants move to dismiss the outrage claim on the grounds that they are immune from liability pursuant to the tax collection exception to the Kansas Tort Claims Act and on the grounds that the amended petition fails to state a claim for outrage under Kansas law.  Because the amended petition fails to state a claim of outrage against the KDOR defendants under Kansas law, the court dismisses the claim and declines to address defendants' KTCA argument.  To prevail on a claim of intentionally causing emotional distress, a plaintiff must prove four elements:  (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental

distress; and (4) the plaintiff's mental distress was extreme and severe. *Valadez v. Emmis Communications,* 290 Kan. 472, 476 (2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 592 (1991)).

Plaintiffs' outrage claim is based solely on conduct allegedly committed during the execution of the writ, including the swat-style entry of the Jordan residence by "masked gunmen," the brandishing of automatic weapons, the detention of Mr. Jordan, the excessive force allegedly used with Mr. Jordan, the destruction of plaintiffs' property and the theft of plaintiffs' property.  As noted earlier in this memorandum and order, however, the amended petition contains no factual allegations plausibly suggesting that any of the KDOR defendants engaged in any of the conduct alleged by plaintiffs as outrageous.  There is no suggestion that any KDOR defendant directly participated in the use of force against or the detention of Mr. Jordan; that any KDOR defendant brandished a weapon or wore a mask; or that any KDOR defendant destroyed or stole plaintiffs' property.  Moreover, even assuming the truth of the allegations contained in plaintiffs' response to the motion to dismiss—that Mssrs. Purney-Crider, Jackson and Wilson were present during the execution of the writ and failed to intervene to stop the conduct of other officers—such conduct does not meet the high standard required to support this cause of action, particularly in the absence of any suggestion that the failure to intervene caused plaintiffs' alleged mental distress. *See P.S. ex rel. Nelson v. The Farm, Inc*., 658 F. Supp. 2d 1281, 1305 (D. Kan. 2009).  This claim is dismissed.

Defendant Steve Stotts moves to dismiss plaintiffs' claim for an accounting of the property seized and sold.  According to Mr. Stotts, the claim is subject to dismissal because it does not comply with the Kansas Judicial Review Act, K.S.A. § 77-601 et seq.  The Kansas Judicial Review Act by its own terms applies only to "proceedings for judicial review and civil

enforcement of agency actions." K.S.A. § 77-603.  Plaintiffs do not seek review of any KDOR action or order and defendants have not demonstrated how the KJRA might apply to plaintiffs' claims.  Moreover, as the court reads plaintiffs' amended petition, their "claim" for an accounting is not a separate cause of action but an equitable remedy based on the underlying violations of law alleged by plaintiffs elsewhere in their petition.  To the extent, then, that plaintiffs have stated a claim for underlying violations of law, they may seek equitable relief in the form of an accounting.  This aspect of defendants' motion, then, is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the KDOR defendants' motion to dismiss plaintiffs' amended petition (doc. 6) is granted in part and denied in part. Plaintiffs may file a second amended petition consistent with this memorandum and order no later than Monday, January 5, 2015.

**IT IS SO ORDERED.**

Dated this 16th day of December, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge