IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Emmett V. Jordan and Amy R. Jordan,**
**individually and as natural parents of**
**J.V.J., a minor;**

       **Plaintiffs,**

v.   Case No. 14-2539-JWL

**Unified Government of Wyandotte County**
**and Kansas City, Kansas et al.,**

       **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiffs Emmett V. Jordan and Amy R. Jordan, individually and on behalf of their minor child, filed suit in state court under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy the tax indebtedness of plaintiffs Emmett and Amy Jordan, delinquent taxpayers. The seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department. The KDOR defendants removed this action to federal court. This matter is presently before the court on a motion to dismiss filed by the Unified Government defendants. Specifically, the Unified Government defendants—Sheriff Don Ash; Deputy Charles Morris; Deputy Eric Freeman; Deputy Rick Whitby; and the Unified Government—move to dismiss plaintiffs' amended petition for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. As will be explained, the motion is granted in part and denied in part.

**Background**

The Unified Government defendants' motion to dismiss is based primarily on Federal Rule of Civil Procedure 12(b)(6). In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiffs' amended petition, are accepted as true for purposes of defendants' motion.

On September 17, 2012, the Kansas Department of Revenue issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan. The writ was executed on September 18, 2012 by more than 80 agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department. Plaintiffs allege that the agents were armed with automatic weapons and dressed in combat gear. According to the amended petition, Emmett Jordan and his brother Gary Jordan were present inside the home when five "law enforcement officers" knocked down the front door of the home and entered the home "shouting profane and largely unintelligible orders" at Mr. Jordan and his brother. The amended petition alleges that plaintiff Emmett Jordan was forced to the floor, face down, and that an unnamed officer had his or her knee on plaintiff's neck. Emmett Jordan alleges that one of his teeth was broken during

this incident. Emmett Jordan was then handcuffed behind his back while "automatic rifles were trained" on his head. Plaintiff Emmett Jordan was then forcibly removed from his home over his protests and his repeated requests for the identity of the officers and the purpose of their visit were ignored.

Plaintiffs allege that Emmett Jordan was detained, still handcuffed, in the back of a police car for a substantial period of time and that, thereafter, he was restricted to a lawn chair outside his house where officers denied him the use of a telephone. Despite the fact that Mr. Jordan provided keys to all locks on the premises, the officers executing the writ utilized destructive measures to access various areas of the Jordans' property, including the breaking of windows and the damaging of doors. Plaintiffs allege that officers remained on his property for nine hours, during which time the officers unnecessarily destroyed and damaged plaintiffs' property and ultimately seized property worth far more than the tax liability owed by the Jordans. Plaintiffs further allege that the officers seized property belonging solely to their minor son in violation of the writ. According to plaintiffs, the officers amused themselves by driving plaintiffs' dirt bikes and ATVs around the Jordans' property and that no officer present made any effort to curb this behavior. By the time the officers left the premises, the Jordans' property had been "ransacked," with the contents of dresser drawers strewn about; broken glass scattered throughout the house; and empty water bottles and food wrappers discarded on the grounds. Plaintiffs further allege that the officers stole property owned by their minor son and that the officers destroyed Emmett Jordan's CPAP machine mask, rendering it impossible for Mr. Jordan to sleep. Plaintiffs contend that they were still cleaning up and repairing the damages more than 30 days after the execution of the writ. They allege that they have suffered

continuous emotional distress; impaired sleep; embarrassment in their neighborhood; and that Emmett Jordan's children are afraid to visit him and will not permit their children to visit on holidays.

In their amended petition, plaintiffs allege that the Unified Government and Sheriff Ash failed to adequately train and supervise law enforcement personnel and adopted and implemented policies, customs or practices permitting law enforcement personnel to engage in the constitutional violations alleged in the amended petition, including excessive force, false arrest and the deprivation of property without due process of law.  Plaintiffs further assert that Deputy Morris, Deputy Freeman, Deputy Whitby and other unidentified deputies of the Wyandotte County Sheriff's Department violated their Fourth, Fifth and Fourteenth Amendment rights based on the detention of Emmett Jordan; the use of excessive force with respect to Emmett Jordan; and the deprivation of plaintiffs' property without due process of law.  Plaintiffs' amended petition also asserts a Kansas common law claim for intentional infliction of emotional distress against all individual defendants.  The Unified Government defendants move to dismiss all claims against them.

**Failure to State a Claim**

Deputies Morris, Freeman and Whitby seek dismissal of the amended petition on the grounds that plaintiffs have not alleged plausible claims for relief under *Twombly* and *Iqbal* against the deputies for any alleged constitutional violations.  According to defendants, the amended petition does not specifically assert what role, if any, the deputies had in connection with the alleged constitutional violations.  As defendants highlight, the amended petition is

devoid of any specific allegations whatsoever concerning the deputies who are named as individual defendants. In fact, the amended petition does not even allege or suggest the presence of these deputies at the Jordans' residence on the date the writ was executed. Because there are no allegations plausibly suggesting that Deputy Morris, Deputy Freeman or Deputy Whitby committed any constitutional violations whatsoever, the claims as currently pled are dismissed and plaintiffs must amend their petition to include individualized allegations as to the specific involvement of these individuals in executing the writ, in detaining Mr. Jordan, and/or in seizing plaintiffs' property. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (to "nudge their claims across the line from conceivable to plausible" in the context of claims subject to qualified immunity defenses, plaintiffs must allege facts sufficient to show, assuming that they are true, that the defendants plausibly violated their constitutional rights).

Plaintiffs state first in their response that Rule 8 does not require any greater specificity at this juncture of the proceedings and that the individual defendants were simply part of a "large group of deputies and officers who descended on plaintiffs' premises and committed the unconstitutional acts set out in the amended petition." This argument is rejected. The Circuit has clearly held in this context that a plaintiff, to survive a motion to dismiss, must differentiate in his or her complaint among individual defendants (rather than refer collectively to "defendants") by identifying what acts are attributable to whom so that individual defendants may ascertain what particular unconstitutional acts they are alleged to have committed. *Id*. at 1250. Plaintiffs further contend in their response that Deputy Morris, Deputy Freeman and Deputy Whitby were all present during the execution of the writ and failed to intervene to stop the unconstitutional conduct of other officers present at the scene. These allegations do not

appear in the amended petition and are conclusory in any event.  The court, however, will permit plaintiffs to amend their petition to the extent they can allege facts plausibly asserting that these deputies may be held liable under § 1983.

Sheriff Ash and the Unified Government also move to dismiss the amended petition on the grounds that the petition fails to state a plausible claim against them.  According to the amended petition, Sheriff Ash is the final policymaker for the Wyandotte County Sheriff's Department.  The petition alleges collectively that "these defendants" (including several Kansas Department of Revenue defendants) had policies and procedures in place which operated to deprive plaintiffs of their constitutional rights.  The petition further alleges that "the defendants" failed to train and supervise their agents, resulting in the violations alleged.  There are no other substantive allegations in the amended petition concerning Sheriff Ash or the Unified Government.  *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (complaint's collective reference to "defendants" not sufficient to show how particular defendant might be individually liable for deprivations of plaintiff's constitutional rights).

With respect to the failure-to-train allegation, plaintiffs do not allege that any violation committed by any deputy of the Sheriff's Department was the result of any deficiency in their training or supervision.  This claim, then, is subject to dismissal.  *See Dodds v. Richardson*, 614 F.3d 1185, 1212-13 (10th Cir. 2010) (failure-to-train and failure-to-supervise theories of liability require showing that injury resulted from failure); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (plaintiff must establish an affirmative link between supervisor's failure to supervise and constitutional deprivation).  Plaintiffs contend in their response that the Unified Government and Sheriff Ash's failure to train and supervise is evident from the conduct of the

6

deputies during the execution of the writ.  Under Tenth Circuit law, plaintiffs may not rely solely on the constitutional violation to establish a failure-to-train or failure-to-supervise theory of liability.  *See Lewis v. McKinley County Bd. of County Commr's*, 425 Fed. Appx. 723, 726 (10th Cir. 2011) (allegation that officer was "obviously ill-trained" in light of alleged violation did not state a claim against municipality); *Hook v. Regents of Univ. of California*, 394 Fed. Appx. 522, 536 (10th Cir. 2010) (to establish supervisor's liability under 1983, plaintiff must show more than constitutional violation by supervisor's subordinate).  Thus, even if plaintiffs had included this allegation in their amended petition, the court would still dismiss the claim.

Similarly, the allegation that the Unified Government and Sheriff Ash adopted and implemented policies, customs or practices which operated to deprive plaintiffs of their constitutional rights fails to state a plausible claim for relief under *Twombly* in the absence of any factual allegations suggesting that the specific constitutional violations alleged by plaintiffs resulted from the adoption or implementation of such policies.  Plaintiffs allege in conclusory fashion that the Unified Government and Sheriff Ash adopted policies permitting criminal damage to property, aggravated assault with deadly weapons, false imprisonment, theft, vandalism and "outrageous conduct," but there is no individualized allegation in the amended petition that any deputies or employees of the Sheriff's Department engaged in any such conduct.  Similarly, plaintiffs suggest that the Unified Government and Sheriff Ash implemented policies permitting the deprivation of property without due process, but there are no specific allegations concerning what role any deputies had in the seizure of plaintiffs' property.  For these reasons, the allegations in the amended petition fail to state a plausible claim for relief against the Unified Government and Sheriff Ash.  The court, however, will permit

plaintiffs to amend their petition to the extent they are able to connect the Unified Government and Sheriff Ash to the alleged constitutional violations committed by deputies of the Sheriff's Department.[1]  Plaintiffs, of course, are cautioned that they may not group together a number of defendants in a single allegation and they must isolate the allegedly unconstitutional acts of each specific defendant.  *See Brown*, 662 F.3d at 1165.

Finally, plaintiffs have asserted claims against Sheriff Ash in both his individual and official capacities.  In their motion to dismiss, the Unified Government defendants assert that the court must dismiss plaintiffs' official capacity claims against Sheriff Ash as such claims are unnecessary and redundant in light of plaintiffs' claims against the Unified Government.  Plaintiffs have not responded to the substance of this argument, but dismissal of the official capacity claims is warranted.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official capacity suit is simply a suit against the entity or county).

**Lack of Subject Matter Jurisdiction**

Plaintiffs assert a claim for intentional infliction of emotional distress (or outrage) under Kansas law against defendants Sheriff Ash, Deputy Morris, Deputy Freeman and Deputy Whitby.  Defendants move to dismiss the outrage claim on the grounds that the court lacks subject matter jurisdiction over the claims because plaintiffs failed to give notice of the claims as required by K.S.A. § 12-105b(d) and *King v. Pimental*, 20 Kan. App. 2d 579, 590 (1995)

---

[1] Plaintiffs contend in their response that Sheriff Ash failed to a file a return of execution of the writ and failed to perform other duties required by statute.  These asserted failures do not appear in the amended petition and the court need not consider whether those allegations are sufficient to state a claim for relief against Sheriff Ash.

(written notice of claim required by statute and is a prerequisite for bringing action under KTCA against municipal employees who cause injury of damages to another while acting within the scope of their employment). Although plaintiffs concede that they did not provide notice of the claim and apparently concede dismissal of their outrage claims, defendants have notified the court in their reply brief that the Kansas Supreme Court, after the filing of defendants' motion to dismiss, overruled *King* and held that notice is not required for claims against municipal employees. *See Whaley v. Sharp*, ___ P.3d ___, 2014 WL 7331586, at *7 (Kan. Dec. 24, 2014). Defendants, then, raise new arguments for dismissal of the outrage claims in their reply brief based on Rule 12(b)(6). Because plaintiffs have not had an opportunity to respond to these new arguments, the court will not address them at this juncture. If plaintiffs choose to reassert their outrage claims in their second amended complaint, then defendants may challenge those claims under Rule 12(b)(6) at that time.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Unified Government's motion to dismiss plaintiffs' amended petition (doc. 16) is granted in part and denied in part. Plaintiffs may file a second amended complaint consistent with both this memorandum and order and the court's January 6, 2015 order no later than Monday, February 2, 2015.

**IT IS SO ORDERED.**

Dated this 15th day of January, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge