In the United States District Court
For the District of Kansas

| | |
|---|---|
| Emmett V. Jordan, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 14-cv-02539-JWL-GLR |
| Unified Government of Wyandotte County/Kansas City, Kansas, et al., | ) |
| Defendants. | ) |

# Memorandum in Support of Motion to Dismiss Claims in Second Amended Complaint

Defendants Unified Government of Wyandotte County/Kansas City, Kansas, Don Ash, Charles Morris, Eric Freeman, and Rick Whitby submit the following memorandum in support of their Motion to Dismiss Claims in Second Amended Complaint (doc. 16).

## Introduction

On September 18, 2012, Wyandotte County Sheriff's deputies and agents of the Department of Revenue served a writ of execution against the property of Plaintiffs Emmett and Amy Jordan. The Jordans and their minor son, J.V.J., have brought Section 1983 claims for violation of their Fourth, Fifth, and Fourteenth Amendment rights against the Unified Government, the Kansas Department of Revenue, and various officials and employees of those entities stemming from that incident. Plaintiffs claim, among other things, that the

defendants used excessive force on and unlawfully detained Emmett Jordan and deprived them of their property without due process of law.

Defendants' filed a motion to dismiss Plaintiffs' amended petition (doc. 16) and supporting memorandum (doc. 17). In a Memorandum and Order entered on January 15, 2015 (doc. 32), the Court granted the motion in part and denied it in part.  The Court dismissed the claims against Deputy Morris, Deputy Freeman, and Deputy Whitby, finding that there were "no allegations plausibly suggesting that [any of these deputies] committed any constitutional violations whatsoever." Doc. 32 at 5. The Court stated that "plaintiffs must amend their petition to include individualized allegations as to the specific involvement of these individuals in executing the writ, in detaining Mr. Jordan, and/or in seizing plaintiffs' property." *Id*. (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)). The Court also ruled that the allegations in the amended petition failed to state a plausible claim for relief against the Unified Government and Sheriff Ash and offered Plaintiffs the opportunity to amend their claims against those defendants. *Id*. at 6-8. Subsequently, Plaintiffs filed their Second Amended Complaint (doc. 36).

In their Second Amended Complaint, Plaintiffs make three claims against movants. In Count I, Plaintiff Emmett Jordan claims that Deputies Charles Morris, Eric Freeman, and Rick Whitby violated the Fourth, Fifth, and Fourteenth Amendments by using excessive force and unconstitutionally detaining him. He alleges that "[d]espite witnessing and having a duty to intervene and prevent the constitutional violations, none intervened or attempted to stop the activities taking place during the execution of the writ." Doc. 36 at 15. In Count II, Plaintiff J.V.J. claims that all defendants deprived him of property without due process of law. In Count III, Plaintiffs bring federal and state claims against Defendant Ash and, presumably, the

Unified Government, based upon the failure to file a return of the writ of execution and sale of the property and to seek confirmation of the sale by the court.

In the Second Amended Complaint, Plaintiffs no longer claim that a policy or custom of the Unified Government or Sheriff Ash caused the alleged constitutional violations, but assert that Sheriff Ash ratified his subordinates' behavior by failing to discipline or provide supplemental training in the months after the act. Plaintiffs also have dropped their state law outrage claim against the individual defendants.

As argued below, despite having been provided with a second opportunity to plead, Plaintiffs have failed to "allege facts sufficient to show (assuming they are true) that the [individual] defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. In addition to qualified immunity, Deputies Morris, Freeman, and Whitby are entitled to absolute quasi-judicial immunity on Plaintiffs' claims. Plaintiffs also have failed to state federal or state claims against Sheriff Ash and the Unified Government. In addition, their procedural due process claims are precluded by the existence of adequate state law remedies. The court lacks subject matter jurisdiction over Plaintiffs' presumed state law claims against the Unified Government.

## Arguments

1.  **Deputies Morris, Freeman, and Whitby are entitled to qualified immunity on Emmett Jordan's claims for use of excessive force and failure to intervene to prevent the use of excessive force by other officers.**

    In the Second Amended Complaint, Emmett Jordan claims that Deputies Morris, Freeman, and Whitby violated his Fourth and Fourteenth Amendment rights by using excessive force or him or by failing to intervene to prevent the use of excessive force by

other officers. He, however, has failed to allege facts to support these claims. In the absence of allegations sufficient to establish a constitutional violation, the deputies are entitled to qualified immunity.

"Qualified immunity doctrine shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The doctrine affords "broad protection," giving officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery. *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001) (citing *Behrens v. Pelletier,* 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Plaintiffs bear "'a heavy two-part burden'" to overcome Defendants' qualified immunity defense. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). First, they must demonstrate that Defendants' actions violated a constitutional right. *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))*; Scott v. Harris,* 550 U.S. 372, 377, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Thomas,* 765 F.3d at 1194. Second, they must show that "'the right was clearly established . . . in light of the specific context of the case.'" *Scott*, 550 U.S. at 377 (quoting *Saucier*, 533 U.S. at 201); *see Pearson*, 555 U.S. at 232; *Thomas,* 765 F.3d at 1194. The court has discretion to consider the two prongs of the qualified immunity analysis in the sequence it deems best "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Second Amended Complaint makes the following allegations concerning the three deputies:

> 23. Emmett, still handcuffed, was wedged into the back of a police car. . . . He was kept in that car for a substantial period. While in said car, Emmett saw what he estimated to be twenty to forty unmarked squad cars and swat team armored car. While unable to personally identify many of the officers, Emmett was able to recognize, from prior acquaintance, Deputies Eric Freeman, Rick Whitby and Charles Morris.
>
> 24. Deputy Freeman presented Emmett with what Deputy Freeman said was a tax warrant. When Emmett commented that the paper "didn't even look official" and was signed by a judge who had acted as attorney for Emmett's ex-wife in their divorce, Deputy Freeman responded that the judge was a "good guy." Deputy Freeman was apparently in some position of authority over at least some of the other officers, as he showed Emmett some papers and gave what appeared to be commands regarding their weapons.
>
> 25. Deputy Charles Morris was personally present at the scene. Some of his activities included blocking vehicular and pedestrian traffic from 86th Street onto Lowell, and keeping people approximately 200 yards away from communicating with or assisting Emmett. Deputy Morris told a neighbor that "Emmett Jordan is in custody." The neighbor, being aware of Emmett's health condition, expressed a desire to check on and possibly help Emmett. Deputy Morris told him he would not be allowed to have any communication or even see Emmett while he was being detained. . . .
>
> 26. Emmett saw Deputy Rick Whitby leaning against the fence with other deputies. Deputy Whitby made eye contact with Emmett and shook his head, giving him a disapproving look.

Doc. 36 at 6-7.

These factual allegations do not support a reasonable inference that Deputy Morris, Deputy Freeman, or Deputy Whitby used excessive force against Emmett Jordan. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Jordan alleges that he saw the three deputies outside the house after he had been placed in the back

5

of a police car. Doc. 36 at 6 (¶ 23). Significantly, he does not allege that any of the three deputies had "face masks, wore body armor, and brandished automatic weapons." *Id*. at 5 (¶ 20). Thus, he has provided no factual basis for believing that they were among the "wedged phalanx of five 'law enforcement officers'" who forcibly entered the house, grabbed him, and took him to the floor. *Id*.

  Jordan also has failed to allege facts to support his claim that the defendant deputies are liable for failing to intervene to prevent the use of excessive force by other officers. To establish his failure-to-intervene claim, Jordan must prove that the deputies observed or had reason to know that excessive force was being used and had a realistic opportunity to prevent the harm from occurring. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)), *cert. denied*, 555 U.S. 1137 (2009). The facts alleged, however, do not support a reasonable inference that any of three deputies was present when the alleged use of excessive force occurred or that they otherwise had reason to know that excessive force was being used and had a realistic opportunity to intervene.

  Because Jordan has failed to allege facts sufficient to establish a constitutional violation, Deputy Morris, Deputy Freeman, and Deputy Whitby are entitled to qualified immunity on his claims for use of excessive force and failure to intervene to prevent the use of excessive force by other officers.

2. **Deputies Morris, Freeman, and Whitby are entitled to qualified immunity on Emmett Jordan's claims that they unconstitutionally detained him and unreasonably failed to intervene to prevent his unconstitutional detention by other officers.**

Deputies Morris, Freeman, and Whitby also are entitled to qualified immunity on Emmett Jordan's claims that they wrongfully detained him in violation of the Fourth and Fourteenth Amendments and unreasonably failed to intervene to prevent his unconstitutional detention by other officers. Jordan has not pleaded facts sufficient to establish these claims. Moreover, the deputies did not violate clearly established law by failing to intervene to end Jordan's detention.

   a. **Jordan has failed to plead facts sufficient to state a claim that Deputy Morris, Deputy Freeman, or Deputy Whitby unconstitutionally detained him or unreasonably failed to intervene in his unconstitutional detention by other officers.**

Jordan has failed to plead facts sufficient to support a reasonable inference that Deputy Morris, Deputy Freeman, or Deputy Whitby unconstitutionally detained him. Jordan alleges that unidentified officers handcuffed him and placed him in a police car. Doc. 36 at 5-6 ¶¶ (21, 23). He alleges that, after an hour and 15 minutes, he was released from the car and placed in a lawn chair, and the handcuffs were removed. *Id*. at 8 (¶ 30). He does not allege that Deputy Morris, Deputy Freeman, or Deputy Whitby was responsible for handcuffing him, placing him in the car, or controlling or superintending his custody.

Jordan apparently claims that the defendant deputies are liable for failing to intervene to end his detention. But he has not alleged facts from which it reasonably could be inferred that any of them observed or had reason to know that he was "unjustifiably

arrested" or had a "realistic opportunity" to free him. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

According to the Second Amended Complaint, Deputy Morris was "blocking vehicular and pedestrian traffic from 86th Street onto Lowell, and keeping people approximately 200 yards away from communicating with or assisting Emmett." Doc. 36 at 6-7 (¶ 25). Jordan does not allege any facts from which it reasonably could be inferred that Morris knew that the detention was unjustifiable. Moreover, Morris could not reasonably have intervened to end Jordan's detention when he was directing traffic two football fields away.

Likewise, Jordan has not pleaded facts sufficient to support a reasonable inference that Deputy Whitby knew that he was being unjustifiably detained. Jordan alleges only that he saw Whitby "leaning against the fence with other deputies" and that Whitby "made eye contact with [him] and shook his head, giving him a disapproving look." *Id*. at 7 (¶ 26). He does not allege that Whitby had any knowledge of the basis (or lack of basis) for his detention.

The allegations against Deputy Freeman are also sparse. According to the Second Amended Complaint, Freeman presented Jordan with what he said was a tax warrant, and a short discussion ensued. Freeman also "gave [to some of the other officers] what appeared to be commands regarding their weapons." *Id*. at 6 (¶ 24). These allegations are insufficient to support to a reasonable inference that Freeman knew that Jordan was being unjustifiably detained.

Because the allegations in Second Amended Complaint do not support a reasonable inference that Deputy Morris, Deputy Freeman, or Deputy Whitby unconstitutionally

8

detained Emmett Jordan or had reason to know that he was being unjustifiably detained and a realistic opportunity to intervene, the deputies are entitled to qualified immunity on Jordan's wrongful detention and failure-to-intervene claims.

### b. Deputies Morris, Freeman, and Whitby did not violate clearly established law by failing to intervene to end Jordan's detention.

Deputy Morris, Deputy Freeman, and Deputy Whitby are entitled to qualified immunity on Emmett Jordan's failure-to-intervene claim because a reasonable officer in their positions would not have known that Jordan's detention violated clearly established law. As discussed above, Jordan has not shown that the three deputies had any knowledge of the reasons for his initial handcuffing and detention in a police car. After what Jordan alleges was an hour and 15 minutes, he was moved to a lawn chair and his handcuffs subsequently removed. Jordan remained in the lawn chair for the remainder of the execution of the writ.

Assuming that the deputies knew that Jordan was not free to move about the property, they did not violate clearly established law by failing to intervene to end that restriction. In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705. But there is no clearly established law on whether or when it is proper to detain the occupant of a house during the execution of a civil writ of execution or tax warrant. Thus, in *Bray v. Planned Parenthood Columbia-Williamette, Inc.*, 746 F.3d 229 (6th Cir. 2014), the Court held that federal marshals serving a

writ of execution were entitled to qualified immunity on the plaintiff's claim that the marshals wrongfully ordered him to remain on the sofa in the front room of his house, denied him the right to walk about his home, and denied him the use of a telephone to call his attorney or anyone else:

> Because the legal and factual scenario presented in this action is not identical to any the Sixth Circuit or the Supreme Court has previously addressed, the rights the marshals violated were not clearly established at the time of the alleged misconduct, and a reasonable officer could have believed that his conduct was lawful. For one thing, the prolonged detention of Michael Bray might have been permissible in the distinct but more common context of executing a warrant for criminal contraband. The Supreme Court has approved of confinement by officers of the occupants of a house to minimize the risk of bodily harm during the execution of a criminal warrant, to facilitate the orderly completion of the search, and to prevent flight and the improper disposal of evidence. *See, e.g., Bailey v. United States,* ––– U.S. ––––, 133 S.Ct. 1031, 1038–41, 185 L.Ed.2d 19 (2013). The right to detain in the somewhat analogous, albeit different, case of a search for contraband, is "categorical," with no relationship to the "quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Michigan v. Summers,* 452 U.S. 692, 705 n. 19, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).
>
> Moreover, although the Supreme Court has questioned whether detention is permissible in the context of a search for evidence other than contraband, *see id.* at 705 n. 20, 101 S.Ct.2587, the Court has not examined the Fourth Amendment implications of a search or a seizure under a civil writ of execution. It is true, though, that our court has held in the civil judgment enforcement context that absolute quasi-judicial immunity may apply if detention is specifically authorized in a valid court order. *See Cooper v. Parrish,* 203 F.3d 937, 943, 948–49 (6th Cir.2000). Accordingly, in the absence of specific guidance to the contrary, a reasonable officer could have interpreted existing precedent to permit the detention of Michael Bray.

*Id.* at 238-39. Defendants' counsel has not found any Tenth Circuit case in which the Court held that it was unconstitutional to detain a property owner in circumstances similar to those alleged in this case.[1]

---

[1] The Tenth Circuit has held that officers executing a facially valid judicial order are entitled to absolute quasi-judicial immunity for acts taken within the scope of the order. *See Moss v.*

In the absence of clearly established law prohibiting the detention of Jordan during execution of the warrant or writ, Deputy Morris, Deputy Freeman, and Deputy Whitby are entitled to qualified immunity on Jordan's claim that they violated his constitutional rights by failing to intervene to end his detention.

## 3. The Second Amended Complaint fails to state a claim against Deputy Morris, Deputy Freeman, or Deputy Whitby for violation of Plaintiff J.V.J.'s right to due process.

The allegations made in the Second Amended Complaint concerning J.V.J.'s property are the same as those found insufficient by the Court in its January 15, 2015 Memorandum and Order (doc. 32). Plaintiff J.V.J. does not allege facts from which it reasonably can be inferred that Deputy Morris, Deputy Freeman, or Deputy Whitby deprived him of his property or were even aware that his property had been taken. For these reasons, Plaintiff J.V.J.'s claims against Deputies Morris, Freeman, and Whitby should again be dismissed.

## 4. Deputies Morris, Freeman, and Whitby are entitled to absolute quasi-judicial immunity.

In addition to qualified immunity, Deputies Morris, Freeman, and Whitby are entitled to absolute quasi-judicial immunity on Plaintiffs' claims.

Officers executing a facially valid judicial order are entitled to absolute quasi-judicial immunity for acts taken within the scope of the order. *See Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009); *see also Wilcox v. Magill*, unpub. op., 468 Fed.Appx. 849, 852-53, 2012 WL 834126 (10th Cir. 2012).

---

*Kopp*, 559 F.3d 1155 (10th Cir. 2009); *see also Wilcox v. Magill*, unpub. op., 468 Fed.Appx. 849, 852-53, 2012 WL 834126 (10th Cir. 2012).

11

As described in the Second Amended Complaint, the actions of Deputies Morris, Freeman, and Whitby were within the scope of the writ of execution. Plaintiffs do not allege that any of the three deputies personally participated in acts outside the scope of the order. Therefore, they are entitled to absolute quasi-judicial immunity on Plaintiffs' claims.

### 5. Plaintiffs' claims against Sheriff Ash and the Unified Government should be dismissed.

The allegations in the Second Amended Complaint fail to state a claim against Sheriff Ash in his individual capacity or the Unified Government. Plaintiffs' procedural due process claims are precluded by the existence of adequate state law remedies. In addition, the Court lacks subject matter jurisdiction over Plaintiffs' state law claims against the Unified Government, if any.

#### a. Plaintiffs have failed to show that Sheriff Ash and the Unified Government ratified the deputies' alleged unconstitutional conduct by failing to discipline or train them after the alleged constitutional violations.

Plaintiffs' Second Amended Complaint does not name Sheriff Ash or the Unified Government as defendants in Count I or Count II, but does allege that Sheriff Ash "is the final policymaker for the Sheriff's Department regarding the training and supervision of his employees"; that none of the deputies received discipline or supplemental training in the months following the execution of the writ; and that Sheriff Ash's failure to discipline or train his subordinates indicates that he ratified their behavior. Doc. 36 at 3 (¶ 7), 14 (¶ 56). Plaintiffs do not allege that the Sheriff's Department had a policy or custom of using excessive force or of unlawfully detaining property owners during the execution of civil writs or warrants.

Sheriff Ash's failure to discipline or train the deputies after the incident did not constitute ratification of their alleged misconduct. "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010), *cert. denied*, 131 S.Ct. 3030 (2011); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Plaintiffs do not allege facts from which it reasonably can be inferred that Sheriff Ash knew of the alleged unconstitutional conduct of his deputies, much less that he failed to discipline and train the deputies because he approved of their actions and the basis for them.

Further, for Sheriff Ash or the Unified Government to be liable, ratification must have been the moving force, or cause, of the alleged violation. *Dempsey v. City of Baldwin*, unpub. op., 143 Fed.Appx. 976, 986, 2005 WL 2002512 (10th Cir. 2005) (citing *Praprotnik*, 485 U.S. at 127); *see Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) ("As to causation, the municipality can only be found liable 'where the *municipality itself* causes the constitutional violation at issue.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) (Plaintiff failed to alleged that "incident occurred pursuant to a decision made by" the sheriff.); *Anderson v. Willis*, 917 F.Supp.2d 1190,1199 (D. Kan. 2013); *Riggs v. City of Wichita*, unpub. op., No. 09-1105-EFM, 2011 WL 2970828, *6, n. 41 (D. Kan. July 21, 2011). It is hard to see how Sheriff Ash's alleged inadequate discipline and training of the deputies after the execution of the writ could have caused the alleged unconstitutional violations. *Id.* (citing *Milam v. City of San Antonio*, 113 Fed. Appx 622, 628 (5th Cir. 2004); *Vukadinovich v.*

*McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990), *cert. denied*, 498 U.S. 1050 (1991); *Landrigan v. City of Warwick*, 628 F.2d 736, 747 n. 7 (1st Cir. 1980)).

In the absence of factual allegations showing that Sheriff Ash ratified the deputies' unconstitutional actions and the basis for them and that the ratification was the moving force, or cause, of the violations, Plaintiff's claims against Sheriff Ash and the Unified Government for inadequate training and supervision should be dismissed for failure to state a claim upon which relief can be granted.

### b. Defendants are not liable for any deprivation of Plaintiffs' rights based on failure to file a return of service or a return of sale or to seek confirmation of the sale by the court.

In Count III, Plaintiffs seek to hold Sheriff Ash liable for failure to file a return of the execution of the warrant (writ) or return of the sale or to seek confirmation of the sale by the Court. The failure to file a return of service, however, did not deprive Plaintiffs of any constitutional rights. Moreover, even if it did, Plaintiffs have failed to allege facts that would establish Sheriff Ash's or the Unified Government's liability for that failure. As for the failure to file a return of the sale or to seek confirmation of the sale, those responsibilities rested with the Department of Revenue, not the sheriff. Finally, to the extent that Plaintiffs' due process rights were violated, they possessed adequate state law remedies.

Plaintiffs maintain that the failure to file a return of service violated their rights under the Fourth, Fifth, and Fourteenth Amendments. They, however, fail to specify how the failure to file a return of service violated any of these amendments. The writ of execution authorized the sheriff to seize Emmett and Amy Jordan's property; that authority did not depend on the subsequent filing of a return. Thus, the failure to file the return did not violate

14

the Fourth Amendment. Plaintiffs' Fifth and Fourteenth Amendment claims presumably are based on the due process clauses in those amendments. The service of the writ afforded Emmett and Amy Jordan notice of the seizure of their property and the reasons for it. The filing of a return is not integral to post-deprivation due process, but rather serves to notify the court that its order was carried out.

Further, Plaintiffs have failed to allege facts indicating that Sheriff Ash was aware that the return had not been filed and, thus, cannot plausibly show that he acted with deliberate indifference. In the absence of evidence that the failure to file the return was the act of a final policymaker, i.e., Sheriff Ash, Plaintiffs cannot directly establish the liability of the Unified Government. Plaintiffs seek to buttress their claims against Sheriff Ash and the Unified Government by alleging that "[i]n 2012, in Wyandotte County, defendants routinely failed to properly file returns on writs and/or seek confirmation of the sale of property seized in other cases." Doc. 36 at 14. The conclusory nature of this allegation cannot be excused by the need to conduct discovery from Defendants. Judicial records are open, yet Plaintiffs have not alleged a single additional instance in which the Sheriff's Office has failed to file a return of service.

Sheriff Ash and the Unified Government also are not liable for the failure to file a return of sale or to seek confirmation of the sale by the court. Typically, the sheriff is required to give the owner of seized personal property notice of its sale and to seek confirmation of the sale by the court. *See* K.S.A. 2013 Supp. 60-2409; K.S.A. 60-2415. In this case, however, those responsibilities transferred to the Department of Revenue. The writ of execution, which was submitted by an attorney for the Department of Revenue, commands the sheriff "to take possession of the above described property *and immediately*

15

*deliver it to Plaintiff for sale in satisfaction of the underlying tax warrant.*" Doc. 6-2 (emphasis added). Upon receiving the Jordans' property, the Department of Revenue stepped into the shoes of the sheriff and became responsible for complying with the statutory provisions concerning notice and confirmation of sale. *See* K.S.A. 79-3617 (". . . A warrant of similar terms, force and effect may be issued by the secretary or the secretary's designee and directed to any officer or employee of the secretary or the secretary's designee, and in the execution thereof such officer or employee shall have all the powers conferred by law upon sheriffs with respect to executions issued against property upon judgments of a court of record and the subsequent proceedings thereunder shall be the same as provided where the warrant is issued directly to the sheriff. . . ."). The Department of Revenue, not the sheriff, is liable for any procedural due process deficiencies.

In addition, Plaintiffs' due process claims are precluded by the existence of adequate state law remedies. "[A] deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 115 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 540-542 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1983)). In this case, Plaintiff has failed to plead facts showing that the failure to file a return of service or a return of sale or to seek confirmation of the sale with the court was anything other than random and unauthorized. In these circumstances, due process was satisfied by the availability of adequate state law remedies. *See McCormick v. City of Lawrence*, 253 F.Supp.2d 1172, 1199 (D. Kan. 2003), *aff'd*, 99 Fed.Appx. 169 (10th Cir. 2004) (available state remedies include a claim under Kansas Tort Claims Act or for conversion); *see also Roman*

*v. FNU LNU Unknown State and Local Officials, Barton County, Kansas*, No. 12-3065-SAC, 2012 WL 1970384, at *4 (D. Kan. June 1, 2012) (citing cases); *Wilkins v. Skiles*, No. 02-3190-JAR, 2005 WL 3084902, at *8 (D. Kan. Oct. 20, 2005) (holding that action for conversion provided adequate state court remedy).

### c. Plaintiffs' state law claims should be dismissed.

Plaintiffs couch their claims in Count III as violations of state, as well as federal, law. For the reasons discussed above, the sheriff's failure to file a return of service did not operate to deprive Plaintiffs of their property. Accordingly, any state law claim for damages against Sheriff Ash or the Unified Government should be dismissed for failure to state a claim. Further, as Plaintiffs previously conceded, *see* doc. 32 at 8-9, they did not file a notice of claim with the Unified Government, as required by K.S.A. 2013 Supp. 12-105b(d). Therefore, the Court lacks subject matter jurisdiction over their state law claims against the Unified Government.

## Conclusion

Deputies Morris, Freeman, and Whitby are entitled to qualified immunity, as well as absolute quasi-judicial immunity, on Plaintiffs' federal claims. Plaintiffs' claims against Sheriff Ash and the Unified Government should be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs' procedural due process claims are precluded by the existence of adequate state law remedies. Assuming Plaintiffs are making state law claims against the Unified Government, they should be dismissed for lack of subject matter jurisdiction.

s/Henry E. Couchman Jr.
Henry E. Couchman Jr. #12842
Unified Government of Wyandotte
   County/Kansas City, Kansas
Legal Department
Municipal Office Building
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Telephone: (913) 573-5060
Facsimile: (913) 573-5243
Email: hcouchman@wycokck.org
*Attorney for Defendants Unified Government of Wyandotte County/Kansas City, Kansas, Don Ash, Charles Morris, Eric Freeman, and Rick Whitby*

## Certificate of Service

I certify that on March 2, 2015, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to William F. Dunn and Roberta L. Wilkes, attorneys for Plaintiffs, and to Jennifer Bates and J. Brian Cox, attorneys for Defendants Kansas Department of Revenue, Nick Jordan, Steve Stotts, Carrie Purney-Crider, Carol Jackson, and Heather Wilson.

s/Henry E. Couchman Jr.
Henry E. Couchman Jr.
