IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EMMETT V. JORDAN, *et alia,*

               Plaintiffs,

v.                                Case no. 2:14-cv-02539-JWL-GLR

THE UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/
KANSAS CITY, KANSAS, *et alia,*

               Defendants.

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS CITY, KANSAS, DON ASH, CHARLES MORRIS,
ERIC FREEMAN, AND RICK WHITBY MOTION TO DISMISS SECOND AMENDED
COMPLAINT</u>**

       Come now Plaintiffs, and submit the following memorandum in response to

Defendants' Motion to Dismiss Second Amended Complaint in accordance with the

requirements of D. Kan. Rule 7.1(c).

**<u>ARGUMENT</u>**

    **A. Deputies Morris, Freeman and Whitby are not entitled to qualified immunity.**

       The defense of qualified immunity is ordinarily asserted in a summary judgment motion.

It can be asserted in a motion to dismiss, but such an assertion at this stage of litigation "…is

subject to a more challenging standard of review than would apply on summary judgment."

*Peterson v. Jensen,* 371 F.3d 1199, (10th Cir. 2004) Such assertions in motions to dismiss are

viewed with disfavor and are rarely granted.

The second amended complaint alleges an outrageous exercise of government force, including excessive force, illegal detention, false imprisonment, vandalism, and theft, in the service of a tax warrant.  All of the deputies present, including the named defendants, concurrently caused, witnessed and failed to intervene in the excesses alleged in the second amended complaint.  All witnessed, at minimum, the illegal arrest and detention of Emmett Jordan in his lawn chair for hours while the executing officers, along with agents of the Kansas Department of Revenue, wreaked havoc.

Charles Morris participated in the isolation of Jordan, and prevented concerned neighbors and friends from contacting Emmett, while informing them that Emmett was "in custody."  He was surely aware of the swarm of government agents, armed with automatic weapons, employing military equipment, and looking like soldiers, who milled about Emmett's property and the surrounding environs, barring residents from reaching their own homes on Emmett's street. Deputy Whitby was situated to observe the aforementioned while it was occurring.  Deputy Freeman directly participated in the lawn chair detention, and appeared to command those other deputies teeming about the premises, vandalizing the buildings, riding on the dirt bikes and four wheelers, and stealing the Jordans' property.  None of them made any move to intervene.

There was certainly no warrant, nor probable cause, supporting the seizure of Emmett Jordan.  None of the considerations allowing detention of occupants of premises being searched in *Michigan v. Summers,* 101 S.Ct. 2587 (1981) were applicable here.  Jordan posed no risk of harm to the searching officers, there was no reason to suppose Jordan would flee when incriminating evidence was found (since no one was searching for "evidence"), and Jordan's

freedom would have enhanced, rather than hindered, an orderly search (Jordan tried to provide keys to the raiders, but they broke in anyway).  Most importantly, this was not a criminal search warrant.  It was civil process, and entirely outside the ambit of *Summers.*

Defendants offer up a sixth circuit case, *Bray v. Planned Parenthood,* 746 F.3d 229 (6th Cir. 2014) for the proposition that the law is unsettled as to whether the rights that the marshals violated in oredering the plaintiff to sit on a sofa, refrain from walking about the house, and refrain from use of the telephone while executing an unusual warrant authorizing restraint and mandating a search of defendant's premises for evidence and for intellectual property.  The *Bray* court, finding that the law was unsettled, upheld the qualified immunity claim of the marshals, while commenting that the entire raid was something one might expect from the Red Guard.

An earlier case from the ninth circuit, *Meredith v. Erath,* 342 F.3d 1057 (9th Cir. 2003) held that an IRS agent, in a search for evidence of income tax violations, violated the plaintiff's constitutional rights by detaining her in handcuffs while searching an apartment.  The search was one for evidence of a crime, and the decision considered the totality of the circumstances.  The court cited *Franklin v. Foxworth,* 31 F.3d 873 (9th Cir. 1994), wherein it was stated that "… a detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy."

No case has ever held that the warrantless seizure and detention of a citizen, not accused of any crime, during the execution of a tax warrant seeking attachment of non-exempt property for the satisfaction of a civil judgment, is reasonable, thus constitutional.  The fourth amendment to the United States Constitution protects Kansas citizens, their persons, papers and possessions, against unreasonable searches and seizures.  Any seizure, particularly of a citizen in

his own house, without a warrant,  is unreasonable *per se,* unless it falls within some carefully delineated and well defined exception to the warrant requirement.  Jordan's detention was perpetrated ancillary to the execution of a tax warrant.  These deputies had to know that they were violating Jordan's constitutional rights.  There was no authority whatsoever supporting a reasonable belief that one can be detained for a prolonged period ancillary to the service of civil process in Kansas.

While it is impossible, absent discovery, to know what was in the mind of any of these deputies as they witnessed this nine and one-half hour ordeal and the depredations alleged, it is at least plausible that they knew their actions were pursuant to a tax warrant and/or a civil writ.  Emmett was never accused of any crime, and there was no reason to fear any violence from this perilously overweight man in his sixties, who was in the process of recovery from a series of serious medical procedures.

**B.  The deputies had a clear duty to intervene to end Jordan's false imprisonment and the destruction and theft of his property.**

Tenth circuit law does not require direct participation, and the allegations of the second amended complaint regarding presence, knowledge, and opportunity make plausible complaint of the Deputies' liability.  All knew of the massive force employed, all knew Emmett was in custody, all knew that he was lengthily confined.  Presumably, they could all hear the doors being broken, the windows breaking and the engines revving.

**C.  Absolute quasi-judicial immunity is unavailable to Deputies Morris, Freeman, and Whitby.**

The actions and failures to act of the named deputies went far beyond the scope of any judicial order.

**D.  The Second Amended Petition states a claim upon which relief can be granted against The Unified Government and Sheriff Ash**

4

Defendants argue that, in order for the United Government or Sheriff Ash to be held liable on a theory of ratification, said ratification must be the "moving force" or cause of the alleged violation.  This argument makes little sense when consideration is given to the nature of ratification, that is, the adoption or approval of a subordinate's action. *City of St. Louis v. Paprotnik,* 485 U.S. 112 (1988).  By adopting an employee's action as its own (what is called 'ratification'), a public employer becomes the author of the action for purposes of liability under sec. 1983. *Gernetzke v. Kenosha Unified Sch. Dist.,* 274 F.3d 464, 469 (7th cir. 2001). Ratification necessarily occurs after the act that is purportedly affirmed or ratified. RESTATEMENT (THIRD) OF AGENCY sec. 4.02 (2006).

Defendants correctly point out that a municipality will not be found liable under a ratification theory unless a final decision maker ratifies and employee's specific unconstitutional actions, as well as the basis for these actions, but forget that it is not required that affirmance or ratification take any particular form.  It is a question of fact whether conduct is sufficient to indicate consent, and ratification may be proven circumstantially. RESTATEMENT (THIRD) OF AGENCY, Secs. 401 and 406.

Ratification may occur by silence.  "A principal may ratify an act by failing to object to it or to repudiate it. RESTATEMENT (THIRD) OF AGENCY sec. 4.01, Cmt. f  (2006) According to the comments in the Third Restatement, in some circumstances, failure to terminate may constitute ratification.  For example in *Bielicki v. Terminx,* 225 F.3d 1159 (10th cir. 2000), the court upheld an award of punitive damages based on ratification where a supervisor told the employee not to "worry about it", and another supervisor "regularly joked about the incident by stating that the employee was 'saving the taxpayers money by (spraying pesticide in a prison in such a way that the inmates were harmed)."

As pointed out by George M. Weaver in his article, "Ratification as an Exception to the sec. 1983 Causation Requirement: Plaintiff's Opportunity or Illusion" (June 2009), in some circumstances, ratification can occur even in the course of litigation ensuing from the tortious act. According to Comments to the Third Restatement, "A person may ratify an unauthorized act by taking a position in litigation that is warranted only by consent to be bound by the act." RESTATEMENT (THIRD) OF AGENCY sec. 4.01, Cmt. h, Reporter's Notes h (2006). See *Bell Atl. Network Servs. Inc. v. P.M. Video Corp.,* 730 A.2d 406, 424 (N.J. Super. App. Div. 1999 (holding that corporation's instituting a declaratory judgment action **and conducting a single defense with its employee** [emphasis supplied] effected ratification) In the case at bar, the Unified Government and Sheriff Ash have conducted the defense with the named deputies through the same representative, and have taken the position that the deputies did nothing wrong.

To be sure, the theory of ratification conflicts with the strict causation requirement in sec. 1983 litigation. Some courts have resolved this conflict by mixing ratification theory with the idea that ratification occurring after the deprivation of a plaintiff's civil right is evidence of pre-existing policy, custom or procedure. *Foley v.City of Lowell,* 948 F.2d 10, 14(1st cir. 1991), *Larez v. City of Los Angeles,* 946 F.2d 630, 645 (9th cir. 1991), *McRorie v. Shimoda,* 795 E.2d 780 (9th cir. 1986), *Grandstaff v. City of Berger,* 767 F.2d 161, 171 (5th cir. 1985) A plaintiff "can make a showing of an illegal policy or custom by demonstrating … that an official with final decision-making authority ratified illegal action." *Burgess v. Fisher,* 735 F.3d 462 (6th cir. 2013)

The actions of the Unified Government and Sheriff Ash, as carried out by the deputies, speak for themselves. The use of a military style raid, including battery, prolonged restraint, property damage and the other abuses set out in the second amended petition to enforce a tax

warrant is a plain indictment of the training and supervision implemented and exercised by the officials in question.  There has never been any justification or explanation of the actions taken against Plaintiffs,  nor has any accounting of the property seized ever been made or can be found. A reviewing court should easily conclude that training and supervisory failures are evident in the government actions and failures to act.  It may well be that discovery will provide detail regarding specific training, policies, and procedures, but the case has not reached the summary judgment stage.

### E.  Defendants are liable for deprivation of Plaintiffs' rights based on failure to file a   return of service or return of sale or to seek confirmation of the sale by the court

In its Motion to Dismiss the Unified Government and Sheriff Ash correctly state that a county sheriff is considered a county official.   They also point to K.S.A. 19-812, which provides that the sheriff  "…or his deputy, shall serve and execute….all process…issued …by lawful authority…and shall receive such fees for his services as are allowed by law."  That is all true; however, the sheriff has other specific duties, some of which are not stated by the Unified Government defendants.   The Court's attention is directed, in particular, to the following:

1.  K.S.A. 19-805, which provides in part:

"…the sheriff also may appoint….deputies and assistants necessary to Carry out the duties of the office, *for whose official acts the sheriff is responsible…."*  (emphasis added)

*2.*  K.S.A. 60-2401 which does provide, as stated by the Unified Government/ Sheriff Ash, that executions can be served by the appropriate officers of the county.

3.  K.S.A. 60-2401 (c) which provides:

"The officer to whom any execution or order of sale is directed shall return it to the court from which it is issued within 60 days from the date thereof…"

4.  K.S.A. 19-820, which provides in part:

"Whenever any sheriff shall neglect to make due return of any writ or
process delivered to him to be executed…he shall be liable to fine or
attachment, or both….and also an action for damages to the party
aggrieved."

5.  K.S.A. 60-2409 which contains the notice required to be given by
the officer who levies upon personal property prior to the sale of the same.

and

6.  K.S.A. 60-2415 which provides for court confirmation of any sale of levied
property, leading to the furnishing by the sheriff of a certificate of sale.

(a)  *Certificate of Purchase.*  The sheriff shall at once make a return of
all sales made under this article to the court….If the court finds the proceedings
regular and in conformity with law and equity, it shall confirm the same,
direct the clerk to make such entry upon the journal and order the sheriff
to make to the purchaser the certificate…provided for in this article.

(b)  *Equity powers of court.* "The court may decline to confirm the sale
where the bid is substantially inadequate, or in ordering a sale or a resale,
may, in its discretion….fix a minimum or upset price at which the property
must be bid if the sale is to be confirmed; or the court may, upon application
for the confirmation of the sale, if it has not theretofore fixed an upset price,
conduct a hearing to establish the value of the property, and as a condition to
confirmation require the fair value of the property be credited upon the judgment,
interest, taxes and costs…."

All of the duties are imposed upon the sheriff with regard to the collection of delinquent taxes.

In particular, see K.S.A. 79-3617, which provides that, in connection with such a warrant

docketed in the county in which property is located:

"The court in which the warrant is docketed shall have jurisdiction
over all subsequent proceedings *as fully as though a judgment had
been rendered in the court…*"

This imposes a duty to file the return of the execution of the writ pursuant to K.S.A. 60-2401(c).

Any duty to return the writ to the Secretary of Revenue is in addition to this duty.   Kansas law

further imposes a duty to correctly give notice of the sale of the personal property seized (K.S.A.

60-2409) and also imposes a duty to file the return of the sale of the property seized (K.S.A. 60-

2415).  All of this procedure leads to the possible confirmation of the sale by the Court OR the opportunity for the owner (here, the taxpayer) to question the amount received from the sale. Should the Sheriff falter in his duties at any step along the way, the taxpayer (here the plaintiffs) is deprived of his property without the constitutional protection of due process.   Further, if the Sheriff's duties end with the return of the writ to the Kansas Department of Revenue, the taxpayer loses his right to seek redress through the equitable powers of the Court.

In the instant case, although the writ may have been legally issued, no return of that writ is listed on the docket sheet for the writ, including whether it was returned to the Department of Revenue.  There appears to have been no confirmation of the sale.

If the Court deems plaintiffs' amended petition inadequate in this respect, plaintiffs respectfully seek leave to amend.

Defendants state in their Motion to Dismiss that plaintiffs' allegations against Sheriff Ash fail to state a Section 1983 supervisory liability claim against him.  The liability of Sheriff Ash is partially based on his statutory liability for the acts of his deputies as stated at K.S.A. 19-805 (see above), and for the direct violation of plaintiffs' due process rights by his failure to follow the statutory procedure provided in the carrying out and serving of writs of execution.  Sheriff Ash also has a statutory duty to keep the peace (See K.S.A. 19-813) rather than to affirmatively wreak havoc.

## CONCLUSION

At this stage of litigation, all that is required of the plaintiff is plausible allegation. Plaintiffs have alleged the plausible presence, participation, knowledge and opportunity to intervene necessary to state claims against the named and unnamed deputies.  The named deputies are not entitled to claim qualified immunity as the law is clear that their actions were

unconstitutional.  They are not entitled to *quasi* judicial immunity as their actions and failures to act went far beyond the scope of any judicial order.

The Unified Government and Sheriff Ash ratified the conduct of their subordinates as they planned and carried out the large scale assault alleged by plaintiffs in this case.

If some sort of return was made to the Kansas Department of Revenue, it did not relieve Sheriff Ash of his duty to file a return in the Wyandotte County tax case.   It certainly did not relieve Sheriff Ash of his duty to file a Motion to Confirm the Sale and notify the plaintiffs, thus triggering their right and opportunity to question the validity of the sale by invoking the Court's equitable powers.

WHEREFORE, plaintiffs pray that defendants' motion to dismiss be denied.

Respectfully submitted,

 /s/ William F. Dunn
William F. Dunn – S. Ct. #9522
Roberta L. Wilkes – S. Ct. #9610
831 Armstrong
MAIL TO: P.O. Box 12513
Kansas City, Kansas 66112
(913)299-0229; (913) 342-7073(fax)
wilkesanddunn@earthlink.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2015, I electronically filed the foregoing Response with the clerk of the court by using the CM/ECF system, which will send a copy to:

Jennifer E. Bates
Kansas Department of Revenue
Legal Services Bureau

J. Brian Cox
Kansas Department of Revenue
Legal Services Bureau

*Attorneys for defendants, Kansas Department of Revenue, Nick Jordan, Steve*

10

*Stotts, Carrie Purney-Crider, Heather Wilson and Carol Jackson*

And to

Henry E. Couchman, Jr.
Unified Government of Wyandotte County/Kansas City, Kansas
Legal Department

*Attorneys for Defendants, Unified Government, Don Ash, Charles Morris, Eric Freeman and Rick Whitby.*

/s/ William F. Dunn – _____
William F. Dunn – Ks. S. Ct. #9522

11