## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Emmett V. Jordan and Amy R. Jordan,**
**individually and as natural parents of**
**J.V.J., a minor;**

**Plaintiffs,**

**v.**                                          **Case No. 14-2539-JWL**

**Unified Government of Wyandotte County**
**and Kansas City, Kansas et al.,**

**Defendants.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs Emmett V. Jordan and Amy R. Jordan, individually and on behalf of their minor child, filed a petition and then an amended petition in state court under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy the tax indebtedness of plaintiffs Emmett and Amy Jordan, delinquent taxpayers. The seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department. The KDOR defendants removed this action to federal court. After an initial motion to dismiss the amended petition was filed by the KDOR defendants—KDOR agents Carrie Purney-Crider, Carol Jackson and Heather Wilson; KDOR's Secretary Nick Jordan; KDOR's Director of Taxation Steve Stotts; and the Kansas Department of Revenue—

the court permitted plaintiffs to file a second amended complaint.[1]  This matter is presently before the court on the KDOR defendants' motion to dismiss plaintiffs' second amended complaint.  As will be explained, the motion is granted in part and denied in part.

**Background**

The facts set forth here are drawn from the allegations in plaintiffs' second amended complaint and are taken as true when considering defendants' motion to dismiss.  On September 17, 2012, the clerk of the Wyandotte County District Court, at the request of the Kansas Department of Revenue, issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan.  The writ was executed on September 18, 2012 by approximately 80 agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department.  Plaintiffs allege that the agents were armed with automatic weapons and dressed in combat gear.  According to the second amended complaint, Emmett Jordan and his brother Gary Jordan were present inside the home when "five law enforcement officers" knocked down the front door of the home and entered the home "shouting profane and largely unintelligible orders" at Mr. Jordan and his brother.  The second amended complaint alleges that plaintiff Emmett Jordan was forced to the floor so fast and hard that he hit his face on the floor and broke

---

[1] In resolving defendants' initial motion to dismiss, the court dismissed all claims against the Kansas Department of Revenue.  While the body of plaintiffs' second amended complaint reflects that ruling, plaintiffs' caption of the second amended complaint still names the Kansas Department of Revenue as a defendant.  The court presumes that this is simply an oversight on the part of plaintiffs' counsel and reaffirms its prior ruling that the Kansas Department of Revenue is no longer a defendant in this case.

2

a tooth.  Plaintiffs further allege that an unnamed officer had his or her knee on plaintiff's neck. Emmett Jordan alleges that one of his teeth was broken during this incident.  Emmett Jordan was then handcuffed behind his back while "automatic rifles were trained" on his head.  Plaintiff Emmett Jordan was then forcibly removed from his home over his protests.  When Mr. Jordan inquired of the officers whether he was under arrest, one officer responded that it was a "civil" matter, but that they intended to detain Mr. Jordan.

Plaintiffs allege that Emmett Jordan was detained, still handcuffed, in the back of a police car for about an hour and fifteen minutes.  When Mr. Jordan was released from the vehicle, he was forced to sit on a lawn chair, with his back to his home so that he could not observe the execution of the writ.  According to plaintiffs, Mr. Jordan was restricted to that lawn chair for the duration of what ended up being a 9-hour ordeal, with officers "trashing" the premises and damaging property.  At some point during his confinement to the lawn chair, "three women" approached Mr. Jordan and introduced themselves as Kansas Department of Revenue agents. Defendant Purney-Crider introduced herself by name and Mr. Jordan identified the other two agents through their signatures on certain currency count statements as defendants Carol Jackson and Heather Wilson.  According to plaintiffs, defendant Purney-Crider advised Mr. Jordan that the "three of us are here to take everything of value."  Mr. Jordan advised the agents where they could find keys to all locks on the premises and, thereafter, defendant Purney-Crider located the keys and held them up for Mr. Jordan to see them.  Plaintiffs allege that the keys were not utilized during the execution of the writ and that officers used destructive means to gain access to the premises.

According to the second amended complaint, defendant Purney-Crider approached Mr. Jordan on the lawn chair at other times during the execution of the writ.  She directed Mr. Jordan to sign certain paperwork and threw the papers in his face when he refused; she threatened to pursue criminal charges against him for having vehicles on his property that were owned by third-parties; she demanded the combination to a safe on the premises; and, at some point, she told Mr. Jordan that she intended to "destroy" him.  Plaintiffs further allege that Mr. Jordan observed defendants Purney-Crider, Jackson and Wilson physically carrying property from the Jordan home and encouraging and directing others, including law enforcement officers, to take Mr. Jordan's property.  Defendants Jackson and Wilson are further alleged to have signed the KDOR's written report concerning the execution of the writ, in addition to signing certain property custody receipts.

Ultimately, agents seized property that had a total value in excess of the Jordans' tax liability.  Moreover, the property seized included personal property belonging to the Jordans' minor son, plaintiff J.V.J., including a valuable coin collection, toys and collectibles.  According to plaintiffs, by the time the agents left the premises around 6:30pm, the Jordans' property had been "ransacked," with the contents of dresser drawers strewn about; broken glass scattered throughout the house; and empty water bottles and food wrappers discarded on the grounds. Plaintiffs contend that they were still cleaning up and repairing the damage more than 30 days after the execution of the writ.  Plaintiffs allege that the property belonging to their son was never returned and that they never received an accounting of the items taken.  They allege that they have suffered continuous emotional distress; impaired sleep; embarrassment in their

4

neighborhood; and that Emmett Jordan's children are afraid to visit him and will not permit their children to visit on holidays.

In their second amended complaint, plaintiffs allege in Count I that KDOR agents Carrie Purney-Crider, Carol Jackson and Heather Wilson violated their Fourth, Fifth and Fourteenth Amendment rights based on the use of excessive force with respect to Emmett Jordan and the unlawful detention of Emmett Jordan.  In Count II, plaintiffs allege that defendants Purney-Crider, Jackson and Wilson, as well as defendants Jordan and Stotts, violated the Fourth, Fifth and Fourteenth Amendment rights of plaintiff J.V.J. by seizing and selling plaintiff J.V.J.'s property without due process of law.  Finally, in Count III, plaintiffs purport to assert a claim against defendants Jordan and Stotts for an accounting of all property received, the disposition of that property, and the amounts received from the sale of that property.  The KDOR defendants move to dismiss all claims against them.

**Excessive Force/False Arrest Claims**

Defendants Carrie-Purney-Crider, Carol Jackson and Heather Wilson seek dismissal of Count I of the second amended complaint on the grounds that Count I fails to state a claim for relief and, in any event, they are qualifiedly immune from plaintiffs' § 1983 claims for excessive force and false arrest.[2]  The doctrine of qualified immunity shields government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights

---

[2] On its face, Count I is not asserted against defendant Jordan or defendant Stotts.  To the extent that plaintiffs' second amended complaint can be read to include a claim of supervisory liability against these defendants under a ratification theory, that claim is dismissed for the reasons set forth below in connection with the court's discussion of that theory as it relates to Count II.

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In resolving a motion to dismiss based on qualified immunity, a court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Turning first to the excessive force claim, defendants contend that the allegations in the second amended complaint do not state a plausible claim for excessive force against them and, thus, plaintiffs have not sufficiently alleged a constitutional violation.  The court agrees.  Emmett Jordan's excessive force claim is based on the single incident when five officers broke into his home and then one or more of the officers pushed him to the ground with such force that he hit his face on the floor and broke a tooth.  The second amended complaint does not allege that any of the KDOR agents personally participated in this incident against plaintiff Emmett Jordan.  Plaintiffs concede as much in their response to the motion to dismiss, arguing that the KDOR agents are liable in any event because they failed to intervene to stop the use of force against Mr. Jordan.  But plaintiffs' failure-to-intervene theory fails to state a claim for excessive force against the KDOR agents because the second amended complaint is devoid of any allegation remotely suggesting that the agents witnessed the use of force at all, let alone had a realistic opportunity to stop it.  *See Savannah v. Collins*, 547 Fed. Appx. 874, 876-77 (10th Cir. 2013) (district court should have dismissed complaint's failure-to-intervene theory for failure to state plausible claim).  A fair reading of plaintiffs' complaint indicates that plaintiff Emmett Jordan did not come into contact with (or even observe) the KDOR agents until the three KDOR

agents approached Mr. Jordan while he was detained on the lawn chair and they introduced themselves.  There is nothing in the second amended complaint to suggest that the KDOR agents were in Mr. Jordan's presence at any time prior to these introductions.  Presumably, plaintiff is able to allege whether the three female agents were present during the use of force against Mr. Jordan and whether, because of their presence, they had an opportunity to stop the use of force.  Because Emmett Jordan has failed to make those allegations—either in the second amended complaint or in his submissions—it is reasonable to infer that none of the KDOR agents were present when other officers used force on Emmett Jordan.  For these reasons, defendants Purney-Crider, Jackson and Wilson are entitled to qualified immunity as to plaintiffs' § 1983 excessive force claim.

Defendants Purney-Crider, Jackson and Wilson also assert the defense of qualified immunity as to plaintiffs' false arrest claim, asserting again that plaintiffs have not sufficiently alleged a constitutional violation in the first instance.  According to defendants, the second amended complaint demonstrates that the KDOR agents were not present when Mr. Jordan was "initially" detained and they did not appear on the scene until after the "initial" detention.  Defendants suggest, then, that they cannot be held responsible for the detention.  The court disagrees and denies the motion to dismiss.  The second amended complaint plausibly suggests that Emmett Jordan was confined without his consent and without justification for 9 hours and that the KDOR agents either personally participated in the prolonged detention of Mr. Jordan or failed to intervene to stop the prolonged detention despite having a realistic opportunity and sufficient time to do so.  Toward that end, plaintiffs allege in the second amended complaint that the three KDOR agents had a conversation with Mr. Jordan while he was confined to the lawn

chair and they introduced themselves; that defendant Purney-Crider returned to Mr. Jordan on several occasions—to show him the keys; to command him to sign paperwork; to threaten him with criminal charges; and to demand the combination for a safe; and that the three agents physically carried property from his home while he was still confined to the lawn chair.  While there are no allegations that any of the KDOR agents personally confined Mr. Jordan to the lawn chair, there are allegations plausibly suggesting that the KDOR agents had some level of authority over the execution of the writ, knew that Mr. Jordan was confined to the lawn chair, and certainly had an opportunity to stop the detention during the 9-hour detention period and yet failed to do so.  This is particularly true given plaintiffs' allegation that the KDOR agents and the Unified Government defendants assisted each other in the execution of the writ and essentially engaged in a joint enterprise in executing the writ, such that it is plausible that the KDOR agents could have intervened in the actions of the Unified Government defendants.[3] Plaintiffs have stated a plausible constitutional violation against the three KDOR agents under *Iqbal*.

The agents contend that they are entitled to qualified immunity in any event because they did not violate any of Mr. Jordan's "clearly established" constitutional rights.  According to the agents, while it may be clearly established that a law enforcement officer may be liable for a constitutional violation if he or she has an opportunity to intervene and fails to do so, *see Lusby*

---

[3] Defendants contend that plaintiffs' "joint enterprise" theory should be dismissed because the court did not authorize this new theory when it permitted the filing of a second amended complaint.  Because defendants can assert no prejudice, this argument is rejected.  Of course, no individual defendant may be held liable under § 1983 based solely on a joint enterprise with another agency and plaintiffs will need to establish an affirmative link between each individual defendant and the specific constitutional violation alleged.  But the alleged existence of a joint enterprise is sufficient at this stage to show the ability of the defendants to have intervened.

*v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) ("[A]lthough [officer] was not liable merely because he was present at the scene of a constitutional violation, . . . he may be liable if he had the opportunity to intervene but failed to do so."),  it was certainly not clearly established at the time of the execution of the writ that "tax collectors" could be liable for a constitutional violation committed by a law enforcement officer if the tax collector had the opportunity to intervene and failed to do so.  This argument, of course, is premised on the agents' belief that they were acting as mere tax collectors during the execution of the writ and not as law enforcement officers.  The allegations in the second amended complaint do not support this argument and plausibly suggest that the KDOR agents were acting as law enforcement officers.  At this stage, then, the court cannot conclude that the "failure to intervene" theory, as a matter of law, does not apply to KDOR agents.  The motion to dismiss is denied as to plaintiff Emmett Jordan's § 1983 false arrest claim.[4]


**Seizure and Sale of Property Claims**

As noted earlier, Count II of the second amended complaint asserts violations of the Fourth, Fifth and Fourteenth Amendments based on the seizure of plaintiff J.V.J.'s property and the subsequent sale of that property.  Defendants Purney-Crider, Jackson and Wilson move to dismiss this claim to the extent it challenges the seizure of J.V.J.'s property on the grounds that the claim fails to state a claim for relief.  To the extent the claim challenges the subsequent failure to return and/or sale of J.V.J.'s property, the defendants contend that they are qualifiedly

---

[4] Defendants also move for dismissal on the grounds that Emmett Jordan has failed to allege an injury stemming from the false arrest, but the second amended complaint plainly alleges that Mr. Jordan suffered emotional distress in connection with his prolonged detention.

immune from plaintiffs' claim. As will be explained, the court denies the motion with respect to plaintiffs' claim concerning the seizure of J.V.J.'s property and grants the motion with respect to the subsequent sale of that property.

In support of their argument that plaintiffs have failed to state a claim for relief based on the seizure of J.V.J.'s property, defendants rely on the Fifth Circuit's decision in *Baddour, Inc. v. United States*, 802 F.2d 801, 807-08 (5th Cir. 1986). Defendants assert that the *Baddour* court held that there is no Fourth Amendment claim against a tax collector who seizes the wrong property so long as the seizure does not involve the invasion of one's premises. Defendants' characterization of the holding in *Baddour* is missing one significant fact—the district court in *Baddour* found after a bench trial that the IRS agent who seized the property of the plaintiff reasonably believed that the delinquent taxpayer had an interest in the property seized. *Id*. at 806. In affirming the district court's qualified immunity finding, the Fifth Circuit, looking to the district court's finding concerning the reasonable beliefs of the IRS agent, concluded that there was no Fourth Amendment violation because probable cause existed to believe that the seized property belonged to the delinquent taxpayer. *Id*. at 807. In so concluding, the Fifth Circuit looked no further than the Supreme Court's holding in *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977). *See id*. In *G.M. Leasing*, the Court held that the seizure of property from the delinquent taxpayer's "alter ego" did not constitute a Fourth Amendment violation when there was probable cause to believe that the property seized belonged to the delinquent taxpayer. *See G.M. Leasing Corp., v. United States*, 429 U.S. 338, 351-52 (1977).

The factual records in *Baddour* and *G.M. Leasing*, then, were sufficiently developed to permit findings about whether the agents had reason to believe that the property seized belonged

10

to the delinquent taxpayer.  Accepting as true the allegations in the second amended complaint, as the court must as this juncture, plaintiff Emmett Jordan objected on multiple occasions to the seizing of J.V.J.'s property on the grounds that the property belonged to J.V.J. and the agents ignored his objections.  Under the facts alleged, it is plausible that the KDOR agents did not have reason to believe that J.V.J.'s property in fact belonged to Emmett and/or Amy Jordan. Defendants, then, have not shown that *Baddour* or *G.M. Leasing* precludes a claim brought on behalf of J.V.J against the KDOR agents for the seizure of his property.

Defendants also assert that *Baddour* precludes a Fifth Amendment due process claim based on the seizure of J.V.J.'s property.  *Baddour* concerned the federal administrative scheme created to resolve tax-related disputes with the IRS.  In that case, the IRS seized and sold the plaintiff's property despite the fact that the plaintiff was not the delinquent taxpayer but merely stored goods in the taxpayer's plant.  The Fifth Circuit rejected the plaintiff's constitutional claims stemming from the seizure on the grounds that the plaintiff had "all sorts of rights against an overzealous officialdom."  *Id*. at 808.  The Circuit highlighted the statutory scheme which provided a process for the aggrieved party to submit a written request for the return of property prior to sale directly to the District Director for the IRS.  *Id*.  Defendants here do not direct the court to any regulation or statute permitting plaintiffs to seek immediate review of the DOR's actions prior to sale from the DOR itself.  This is a significant distinguishing fact from *Baddour*.

Defendants insist that plaintiffs had numerous avenues of recourse under state law like the plaintiff in *Baddour*.  Defendants assert that plaintiffs could have intervened in the Writ of Execution action to assert J.V.J.'s ownership interests.  Defendants, however, have not alleged that plaintiffs had sufficient  notice of the writ of execution action such that they could have

intervened prior to the sale of the property.  Defendants assert that plaintiffs could have filed a chapter 77 action for judicial review of agency actions.  That chapter, however, requires a "final agency action" and defendants have not alleged that plaintiffs could have challenged the DOR's process as a "final agency action" prior to the sale of plaintiffs' property.  Finally, defendants assert that plaintiffs could have immediately commenced a district court action pursuant to K.S.A. § 60-907 for injunctive relief concerning "illegal" acts of public officers.  The Kansas Supreme Court, however, has held that this provision applies only to actions of an administrative official taken without authority or action which is permeated with fraud or corruption.  *Mobil Oil Corp. v. McHenry*, 200 Kan. 211, 234 (1968).  The allegations in the second amended complaint do not reflect that this statute would provide plaintiffs with a remedy for the deprivation alleged.

In sum, the allegations in the second amended complaint do not reflect that the KDOR agents are entitled to qualified immunity as to the seizure of J.V.J.'s property.  Moreover, the KDOR agents have not sufficiently supported that defense with allegations or evidence demonstrating that plaintiffs had available to them "all sorts of rights" prior to sale against the DOR's conduct.  The *Baddour* argument, while it might yet prevail, is premature on this record.

With respect to plaintiffs' claim that the KDOR agents violated J.V.J.'s due process rights in connection with the sale of his property, the agents assert the defense of qualified immunity.  According to the agents, the second amended complaint fails to allege any facts plausibly suggesting that any of the three KDOR agents was personally involved in or had any affirmative link to the sale of J.V.J.'s property.  The court agrees.  While the second amended complaint contains numerous specific allegations that plausibly support an inference that the

12

agents were personally involved in the seizure of J.V.J.'s property, it is devoid of any allegations concerning the subsequent sale of that property. Indeed, the second amended complaint makes no mention of the KDOR agents after the point in time in which the trucks were loaded with the property seized during the execution of the writ. There is no allegation of any contact with any of the agents after that point in time nor or there allegations of any efforts to secure the return of J.V.J.'s property or to resolve any claims of ownership regarding J.V.J.s property. Because plaintiffs have not sufficiently alleged in their second amended complaint that the KDOR agents violated J.V.J.'s due process rights in connection with the sale of his property, the KDOR agents are entitled to qualified immunity as to any claims concerning the sale of J.V.J.'s property.

Plaintiffs assert a claim for supervisory liability against defendants Jordan and Stotts with respect to the individual agents' deprivation of J.V.J.'s property. Specifically, plaintiffs allege that defendants Jordan and Stotts are liable for the violation of J.V.J.'s due process rights because they ratified the conduct of the individual agents by failing to discipline or train the agents after the seizure and sale of J.V.J.'s property. Plaintiffs do not allege that defendants Jordan and Stotts declined to discipline the KDOR agents in light of a policy of authorizing unlawful deprivations; rather, plaintiffs assert only that defendants Jordan and Stotts ratified the violations of J.V.J.'s due process rights by failing to discipline the deputies for their seizure and sale of J.V.J.'s property.

Because plaintiffs do not allege in the second amended complaint (or in their submissions) that defendants Jordan and Stotts were even aware of the seizure or sale of J.V.J.'s property, plaintiffs cannot hold defendants Jordan and Stotts liable for the seizure and sale of the property under a ratification theory. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 790

(10th Cir. 2010).  Moreover, even assuming that defendants Jordan or Stotts had knowledge of the seizure or sale of J.V.J.'s property, any failure to discipline the KDOR agents for the seizure and sale of the property is insufficient to state a claim for supervisory liability under § 1983. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (failure to discipline officer after violation cannot have "caused" constitutional violation for purposes of 1983 liability under "basic principals [*sic*] of linear time"); *Frodge v. City of Newport*, 501 Fed. Appx. 519, 532-33 (6th Cir. 2012) (supervisor's failure to discipline officer for unconstitutional conduct insufficient for supervisory liability; supervisory liability requires "active constitutional behavior" rather than allegation that supervisor played a passive role); *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 628 (5th Cir. 2004) (supervisor's failure to discipline officer for illegal arrest was not actionable "ratification" but failure to discipline, when combined with other evidence, could tend to support inference that there was a pre-existing de facto policy of making illegal arrests). The court, then, dismisses plaintiffs' supervisory liability claims against defendants Jordan and Stotts for the KDOR agents' seizure and sale of J.V.J.'s property.[5]

**Equitable Accounting**

Count III of the second amended complaint purports to assert a claim against defendants Jordan and Stotts for an accounting of all property received, the disposition of that property, and

---

[5] Plaintiffs contend in their submissions that defendants Jordan and Stotts have ratified the conduct of the KDOR agents "by the position" that defendants Jordan and Stotts "have taken in this litigation."  Nothing in defendants Jordan or Stotts' defense against plaintiffs' lawsuit can be deemed to have caused an underlying constitutional violation in this case.  *See Cordova*, 569 F.3d at 1194 (conduct that occurs after constitutional violation cannot cause that violation).

the amounts received from the sale of that property.  In ruling on defendants' initial motion to dismiss, the court concluded that plaintiffs had not stated a separate claim for an accounting and, rather, sought equitable relief in the form on an accounting to the extent they ultimately established any constitutional violations alleged in their complaint.  Presumably because plaintiffs, in their second amended complaint, have re-asserted this request for an accounting as a separate count, defendants again move for dismissal of the count.  The court denies defendants' motion to dismiss this "claim" because there is no claim to dismiss.  The court reiterates that plaintiffs' "claim" for an accounting is not a separate cause of action but simply a method through which plaintiffs seek to calculate their damages sustained as a result of the underlying violations of law alleged by plaintiffs elsewhere in their second amended complaint.

That being said, the court doubts whether an equitable accounting is available to plaintiffs as a method of calculating their damages in this case.  An accounting is proper only when there exists "no adequate remedy at law."  *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962).  Thus, an equitable accounting is warranted only when "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."  *Id.*  It is a "rare care" when computational complexities will render a legal remedy inadequate, *see Haynes Trane Service Agency, Inc. v. American Standard, Inc*., 573, F.3d 947, 965 (10th Cir. 2009), and plaintiffs here do not allege that money damages are not an adequate remedy or that they will be unable to determine damages any other way.   Nonetheless, it is premature to decide on defendants' motion to dismiss, prior to the commencement of discovery, whether plaintiffs are

able to pursue this remedy and, if so, whether they can obtain that remedy from any of the defendants in this case.[6]

**Service of Process**

Lastly, the KDOR defendants move to dismiss plaintiffs' second amended complaint for lack of personal jurisdiction on the grounds that proper service has never been obtained. Plaintiffs have moved for a 60-day extension of time to obtain service.  The court denies the motion to dismiss and denies as moot the motion for an extension of time to obtain service.

Federal Rule of Civil Procedure 4(e)(1) provides that, unless federal law provides otherwise, an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Kansas state law, in turn, provides that "the filing of an entry of appearance shall have the same effect as service."  K.S.A. § 60-203(c).  A formal entry of appearance is not required.  Under this court's local rules, an attorney enters his or her appearance by, among other methods, signing a notice of removal filed in this case.  See D. Kan. R. 5.1(d)(2).  The notice of removal in this case was filed by counsel on behalf of the Revenue defendants.  Under this court's local rules, then, this filing constitutes a voluntary entry of appearance on behalf of the Revenue defendants which, under Kansas law, has the same effect as service. *See Fink v. Swisshelm*, 182 F.R.D. 630, 631-32 (D. Kan. 1998)

---

[6] Count III also contains allegations that no return of the writ of execution was ever filed and no return of sales was ever filed as contemplated by Kansas statutory law.  To the extent these allegations are asserted against defendants Jordan and Stotts, they are dismissed for the same reasons as set forth in the court's memorandum and order, also filed today, concerning the Unified Government defendants' motion to dismiss plaintiffs' second amended complaint.

(insufficient service irrelevant where defendant entered appearance by filing notice of removal such that court acquired personal jurisdiction) (citing *Pennoyer v. Neff*, 95 U.S. 714, 725 (1877) (court acquires personal jurisdiction through service of process or voluntary entry of appearance)).  Thus, because defendants filed a notice of removal, they cannot now contest the sufficiency of service because service was effected as of the filing of the removal notice.  *See Jenkins v. City of Topeka*, 136 F.3d 1274 (10th Cir. 1998) (because entry of appearance effects service under K.S.A. § 60-203(c), once counsel enters appearance prior to any responsive pleading, defendants cannot thereafter contest sufficient of service).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the KDOR defendants' motion to dismiss plaintiffs' second amended complaint (doc. 43) is granted in part and denied in part; and plaintiffs' second motion for extension of time to obtain service (doc. 39) is denied as moot.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' claims against defendant Nick Jordan and defendant Steve Stotts are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 17th day of April, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

17