## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Emmett V. Jordan and Amy R. Jordan,**
**individually and as natural parents of**
**J.V.J., a minor;**

   **Plaintiffs,**

**v.**             **Case No. 14-2539-JWL**

**Unified Government of Wyandotte County**
**and Kansas City, Kansas et al.,**

   **Defendants.**

### <u>MEMORANDUM & ORDER</u>

Plaintiffs Emmett V. Jordan and Amy R. Jordan, individually and on behalf of their minor child, filed a petition and then an amended petition in state court under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy the tax indebtedness of plaintiffs Emmett and Amy Jordan, delinquent taxpayers. The seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department. The KDOR defendants removed this action to federal court. After an initial motion to dismiss the amended petition was filed by the Unified Government defendants—Sheriff Don Ash; Deputy Charles Morris; Deputy Eric Freeman; Deputy Rick Whitby; and the Unified Government—the court permitted plaintiffs to file a second amended complaint. This matter is presently before the court on the Unified Government defendants'

motion to dismiss plaintiffs' second amended complaint.  As will be explained, the motion is granted in part and denied in part.


**Background**

The facts set forth here are drawn from the allegations in plaintiffs' second amended complaint and are taken as true when considering defendants' motion to dismiss.  On September 17, 2012, the clerk of the Wyandotte County District Court, at the request of the Kansas Department of Revenue, issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan.  The writ was executed on September 18, 2012 by approximately 80 agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department.  Plaintiffs allege that the agents were armed with automatic weapons and dressed in combat gear.  According to the second amended complaint, Emmett Jordan and his brother Gary Jordan were present inside the home when "five law enforcement officers" knocked down the front door of the home and entered the home "shouting profane and largely unintelligible orders" at Mr. Jordan and his brother.  The second amended complaint alleges that plaintiff Emmett Jordan was forced to the floor so fast and hard that he hit his face on the floor and broke a tooth.  Plaintiffs further allege that an unnamed officer had his or her knee on plaintiff's neck.  Emmett Jordan alleges that one of his teeth was broken during this incident.  Emmett Jordan was then handcuffed behind his back while "automatic rifles were trained" on his head.  Plaintiff Emmett Jordan was then forcibly removed from his home over his protests.  When Mr. Jordan

inquired of the officers whether he was under arrest, one officer responded that it was a "civil" matter, but that they intended to detain Mr. Jordan.

Plaintiffs allege that Emmett Jordan was detained, still handcuffed, in the back of a police car for about an hour and fifteen minutes. During his detention in the police car, Mr. Jordan was able to observe Deputies Morris, Freeman and Whitby in the vicinity and he had a specific conversation with Deputy Freeman, who presented Mr. Jordan with the tax warrant and was issuing commands to other officers regarding their weapons. According to plaintiffs, at some point while Mr. Jordan was detained in the vehicle, Deputy Morris was stationed at the perimeter of the property in an effort to keep vehicular and pedestrian traffic away from the property. During that time, Deputy Morris advised a concerned neighbor that "Emmett Jordan is in custody" and that the neighbor would not be permitted to see him while he was detained.

When Mr. Jordan was released from the vehicle, he was forced to sit on a lawn chair, with his back to his home so that he could not observe the execution of the writ. According to plaintiffs, Mr. Jordan was restricted to that lawn chair for the duration of what ended up being a 9-hour ordeal, with officers "trashing" the premises and damaging property. Ultimately, agents seized property that had a total value in excess of the Jordans' tax liability. Moreover, the property seized included personal property belonging to the Jordans' minor son, plaintiff J.V.J., including a valuable coin collection, toys and collectibles. According to plaintiffs, by the time the agents left the premises around 6:30pm, the Jordans' property had been "ransacked," with the contents of dresser drawers strewn about; broken glass scattered throughout the house; and empty water bottles and food wrappers discarded on the grounds. Plaintiffs contend that they were still cleaning up and repairing the damage more than 30 days after the execution of the

3

writ.  Plaintiffs allege that the property belonging to their son was never returned and that they never received an accounting of the items taken.  They allege that they have suffered continuous emotional distress; impaired sleep; embarrassment in their neighborhood; and that Emmett Jordan's children are afraid to visit him and will not permit their children to visit on holidays.

In their second amended complaint, plaintiffs allege in Count I that Deputy Morris, Deputy Freeman and Deputy Whitby of the Wyandotte County Sheriff's Department violated their Fourth, Fifth and Fourteenth Amendment rights based on the use of excessive force with respect to Emmett Jordan and the unlawful detention of Emmett Jordan.  In Count II, plaintiffs allege that the Unified Government, Sheriff Ash, and Deputies Morris, Freeman and Whitby violated the Fourth, Fifth and Fourteenth Amendment rights of plaintiff J.V.J. by seizing and selling plaintiff J.V.J.'s property without due process of law.  Finally, in Count III, plaintiffs seek an order "requiring the filing of returns pursuant to Kansas law."  Specifically, plaintiffs seek an order requiring Sheriff Ash to return the writ of execution consistent with K.S.A. § 60-2401(c) and to file a return of sales consistent with K.S.A. § 60-2415.  Plaintiffs allege that Sheriff Ash's failure to file these returns violated plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments and also violated Kansas law.  The Unified Government defendants move to dismiss all claims against them.

**Excessive Force/False Arrest Claims**

Deputies Morris, Freeman and Whitby seek dismissal of Count I of the second amended complaint on the grounds that they are qualifiedly immune from plaintiffs' § 1983 claims for excessive force and false arrest.  The doctrine of qualified immunity shields government

officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In resolving a motion to dismiss based on qualified immunity, a court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Turning first to the excessive force claim, defendants contend that the allegations in the second amended complaint do not state a plausible claim for excessive force against Deputies Morris, Freeman or Whitby and, thus, plaintiffs have not sufficiently alleged a constitutional violation. The court agrees. Emmett Jordan's excessive force claim is based on the single incident when five officers (whom plaintiff admittedly did not recognize) broke into his home and then one or more of the officers pushed him to the ground with such force that he hit his face on the floor and broke a tooth. The second amended complaint does not allege that any of the named deputies personally participated in this incident against plaintiff Emmett Jordan. Plaintiffs concede as much in their response to the motion to dismiss, arguing that the named deputies are liable in any event because they failed to intervene to stop the use of force against Mr. Jordan. But plaintiffs' failure-to-intervene theory fails to state a claim for excessive force against the named deputies because the second amended complaint is devoid of any allegation remotely suggesting that Deputies Morris, Freeman or Whitby witnessed the use of force at all, let alone had a realistic opportunity to stop it. *See Savannah v. Collins*, 547 Fed. Appx. 874, 876-77 (10th Cir. 2013) (district court should have dismissed complaint's failure-to-intervene

theory for failure to state plausible claim).  A fair reading of plaintiffs' complaint indicates that plaintiff Emmett Jordan had met Deputies Morris, Freeman and Whitby on prior occasions and that he recognized those individuals when he saw them on his property during the execution of the writ.  Presumably, plaintiff is able to allege whether those named deputies were present during the use of force against Mr. Jordan and whether, because of their presence, they had an opportunity to stop the use of force.  Because Emmett Jordan has failed to make those allegations—either in the second amended complaint or in his submissions—it is reasonable to infer that none of the named deputies were present when other officers used force on Emmett Jordan.  For these reasons, Deputies Morris, Freeman and Whitby are entitled to qualified immunity as to plaintiffs' § 1983 excessive force claim.

Deputies Morris, Freeman and Whitby also assert the defense of qualified immunity as to plaintiffs' false arrest claim, asserting again that plaintiffs have not sufficiently alleged a constitutional violation in the first instance.  With respect to this claim, the court disagrees and denies the motion to dismiss.  The second amended complaint plausibly suggests that Emmett Jordan was confined without his consent and without justification for 9 hours and that Deputies Morris, Freeman and Whitby either personally participated in the detention of Mr. Jordan or failed to intervene to stop the prolonged detention despite having a realistic opportunity and sufficient time to do so.  Toward that end, plaintiffs allege in the second amended complaint that Emmett Jordan, at various times during his detention, could personally see all three named deputies from his location and that all three deputies knew that Mr. Jordan was being detained. While there are no allegations that any of these deputies personally placed Mr. Jordan in the police car or personally held him on the lawn chair, there are allegations that the deputies had

6

some level of authority over the execution of the writ, knew that officers were detaining Mr. Jordan (e.g., plaintiffs allege that Depute Morris advised neighbors that Mr. Jordan was "in custody" and that Deputy Freeman engaged Mr. Jordan in conversation during the detention), and certainly had an opportunity to stop the detention during the 9-hour detention period and yet failed to do so.  Plaintiffs have stated a plausible constitutional violation against Deputies Morris, Freeman and Whitby under *Iqbal*.

The deputies contend that they are entitled to qualified immunity in any event because they did not violate any of Mr. Jordan's "clearly established" constitutional rights.  According to the deputies, no reasonable officer would have known that Mr. Jordan's detention amounted to a constitutional violation.  The deputies, at this juncture, have not shown they are entitled to qualified immunity as to Emmett Jordan's false arrest claim.  Mr. Jordan alleges that he was detained—without an arrest warrant—for a longer period of time than was reasonably necessary for the officers to conduct a proper search of Mr. Jordan's property for the purpose of seizing property in accordance with the writ.  At the time of the execution of the writ in September 2012, the Supreme Court had long since clearly established a Fourth Amendment right not to be detained without a warrant for longer than necessary to accomplish legitimate law enforcement objectives.  *See Michigan v. Summers*, 452 U.S. 692, 701-05 (1981) (suspect may be detained in his own home without probable cause for the time necessary to search the premises pursuant to a valid warrant supported by probable cause).  Moreover, at the time of the execution of the writ, it was clearly established law that an officer may be liable for a constitutional violation if he had the opportunity to intervene and failed to do so.  *See Lusby v. T.G. & Y. Stores, Inc*., 749 F.2d 1423, 1433 (10th Cir. 1984) ("[A]lthough [officer] was not liable merely because he was present

at the scene of a constitutional violation, ... he may be liable if he had the opportunity to intervene but failed to do so."). Thus, assuming that Emmett Jordan was detained longer than was necessary to complete the search and seizure, no officer of reasonable competence could have thought that such actions were lawful.[1]

While plaintiffs do not specifically identify Sheriff Ash as a defendant in Count I, other allegations in the second amended complaint suggest that plaintiffs intend to assert a claim for supervisory liability against Sheriff Ash with respect to the named deputies' unlawful detention of Emmett Jordan.[2] Specifically, plaintiffs allege that Sheriff Ash is liable for the unlawful detention of Emmett Jordan because he ratified the conduct of the named deputies by failing to discipline or train the deputies after the unlawful detention. Plaintiffs do not allege that Sheriff Ash declined to discipline the deputies in light of a policy of authorizing unlawful detentions; rather, plaintiffs assert only that Sheriff Ash ratified the specific unlawful detention of Emmett Jordan by failing to discipline the deputies for that one incident.

---

[1] Defendants rely on *Bray v. Planned Parenthood Columbia-Willamette Inc*., 746 F.3d 229 (6th Cir. 2014) for the idea that whether the detention of a judgment debtor is permissible during the execution of a writ was not clearly established law at the time officers in this case executed the writ. That case is not binding on this court and, in any event, does not address the factual allegations present here—the detention of the delinquent taxpayer beyond the time reasonably necessary to conduct a proper search. *Bray* discussed only whether detention itself was permissible—and held that the law was not clearly established as to that issue in the context of a judgment debtor during the execution of a civil writ. *See id*. at 238-39. There were no allegations in *Bray* that the detention extended far beyond the time necessary for a proper search.

[2] To the extent plaintiffs also seek to hold Sheriff Ash and the Unified Government liable for the deputies' alleged use of excessive force as to Emmett Jordan, those claims necessarily fail because plaintiffs have failed to state a claim for relief regarding the underlying constitutional violation. *See Gray v. University of Colo. Hosp. Authority*, 672 F.3d 909, 918 n.7 (10th Cir. 2012).

Because plaintiffs do not allege in the second amended complaint that Sheriff Ash was even aware of the detention of Emmett Jordan, plaintiffs cannot hold Sheriff Ash liable for that detention under a ratification theory.  *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010).  Moreover, even assuming that Sheriff Ash had knowledge of the detention, his failure to discipline the deputies for that isolated detention is insufficient to state a claim for supervisory liability under § 1983.  *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (failure to discipline officer after violation cannot have "caused" constitutional violation for purposes of 1983 liability under "basic principals [*sic*] of linear time"); *Frodge v. City of Newport*, 501 Fed. Appx. 519, 532-33 (6th Cir. 2012) (supervisor's failure to discipline officer for unconstitutional conduct insufficient for supervisory liability; supervisory liability requires "active constitutional behavior" rather than allegation that supervisor played a passive role); *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 628 (5th Cir. 2004) (supervisor's failure to discipline officer for illegal arrest was not actionable "ratification" but failure to discipline, when combined with other evidence, could tend to support inference that there was a pre-existing de facto policy of making illegal arrests).  The court, then, dismisses plaintiffs' supervisory liability claim against Sheriff Ash for the deputies' alleged unlawful detention of Emmett Jordan.[3]

---

[3] Plaintiffs contend in their submissions that Sheriff Ash has ratified the conduct of the deputies by utilizing the same counsel as the deputies and by arguing in this litigation that the deputies "did nothing wrong."  Nothing in Sheriff Ash's defense against plaintiffs' lawsuit can be deemed to have caused an underlying constitutional violation in this case.  *See Cordova*, 569 F.3d at 1194 (conduct that occurs after constitutional violation cannot cause that violation).

**Seizure and Sale of Property Claims**

As noted earlier, Count II of the second amended complaint asserts violations of the Fourth, Fifth and Fourteenth Amendments based on the seizure of plaintiff J.V.J.'s property and the subsequent sale of that property. All of the Unified Government defendants move to dismiss this count. Deputies Morris, Freeman and Whitby move to dismiss Count II for failure to state a claim for a violation of plaintiff J.V.J.'s constitutional rights. Specifically, these defendants contend that the second amended complaint contains no allegations plausibly suggesting that the named deputies seized J.V.J.'s property, sold J.V.J.'s property, or that the named deputies were even aware that these acts occurred. With respect to the sale of J.V.J.'s property, the court agrees. The second amended complaint contains no allegations concerning any link between the named deputies and the sale of J.V.J.'s property. There is no allegation that the deputies had any knowledge of what happened to any of the seized property after the execution of the writ and no allegation that plaintiffs had any contact with any of the deputies after the execution of the writ. Because the complaint does not contain allegations sufficient to state a plausible claim that the deputies were involved in any respect in the sale of J.V.J.'s property, this claim is dismissed.

With respect to the seizure of J.V.J.'s property, however, the second amended complaint contains allegations sufficient to permit a plausible inference that the deputies violated J.V.J.'s constitutional rights. Plaintiffs specifically allege that the named deputies "assisted the Department of Revenue in seizing the property of plaintiffs" and that the deputies and the KDOR engaged in a "joint enterprise" to accomplish the execution of the writ. Moreover, these allegations, coupled with plaintiffs' allegations that the named deputies were present for the

entirely of the 9-hour ordeal and that Mr. Jordan, on numerous occasions, protested the seizure of J.V.J.'s property, is sufficient at this juncture to plausibly suggest that the deputies had a reasonable opportunity to intervene to stop the seizure of J.V.J.'s property but failed to do so. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (law enforcement officer has a duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers).[4]

With respect to Sheriff Ash and the Unified Government, plaintiffs allege that they are liable for the seizure and sale of J.V.J.'s property because they ratified the conduct of the named deputies by failing to discipline or train the deputies after the seizure and sale of J.V.J.'s property.  Because plaintiffs have failed to state a claim for relief regarding the underlying constitutional violation, their claims for supervisory or municipal liability necessarily fail.  *See Gray v. University of Colo. Hosp. Authority*, 672 F.3d 909, 918 n.7 (10th Cir. 2012).  Count II, then, is properly dismissed as to Sheriff Ash and the Unified Government.


**Failure to Return Service on Writ and Confirmation of Sale**

Count III of plaintiffs' second amended complaint is asserted, at least with respect to the Unified Government defendants, only against Sheriff Ash.  In that count, plaintiffs seek an order requiring Sheriff Ash to return the writ of execution consistent with K.S.A. § 60- 2401(c) and to file a return of sales consistent with K.S.A. § 60-2415.  Plaintiffs allege that Sheriff Ash's

---

[4] The named deputies contend, in the alternative, that they are entitled to absolute quasi-judicial immunity as to this claim.  This argument is denied, as absolute immunity does not apply when officers are alleged to have exceeded the scope of the writ.  *See Wilcox v. Magill*, 468 Fed. Appx. 849, 852-53 (10th Cir. 2012). Plaintiffs have alleged that defendants exceeded the permissible scope of the writ by seizing property that belonged to J.V.J.

failure to file these returns violated plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments and also violated Kansas law.  The claim is dismissed.  To the extent plaintiffs purport to assert a claim for relief under federal law, plaintiffs have alleged no deprivation of a constitutional right caused by Sheriff Ash's alleged failure to return the writ after the execution of it and his purported failure to file a return of sales.  Plaintiffs have alleged no constitutional deprivation caused by the Sheriff's purported failures beyond that which already occurred in connection with the seizure and sale of J.V.J.'s property.   While they contend in their submissions that Sheriff Ash's "failure to follow the statutory procedure for carrying out and serving writs of execution" caused a "direct violation of plaintiffs' due process rights," they wholly fail to articulate how that failure deprived plaintiffs of any property right for purposes of a due process analysis.   In a related vein, plaintiffs do not allege what damages they might have sustained in light of Sheriff Ash's failure to file the requisite returns.  For these reasons, any federal claim asserted in Count III is dismissed.

To the extent plaintiffs purport to assert a claim for relief under state law, the claim is also dismissed.  Even assuming that the statutory scheme identified by plaintiffs contemplates a private right of action for a violation, plaintiffs have not alleged that they suffered any damages as a result of Sheriff Ash's failure to return the writ or to file a return on the sale of the items seized.


**IT IS THEREFORE ORDERED BY THE COURT THAT** the Unified Government defendants' motion to dismiss plaintiffs' second amended complaint (doc. 46) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' claims against Sheriff Ash and the Unified Government are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 17th day of April, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

13